CHASEZ, Judge.
This is a workman’s compensation claim in which Mrs. Inez Le Blanc Schumacher has sued Werthan Bag Corporation, her employer, and Pacific Employers Insurance Company, its insurer. The suit is based on an injury which she received during the course and scope of her employment at Wer-than Bag Corporation. It was stipulated compensation was paid at the rate of $35.00 a week for a period of twenty weeks from July 28, 1965 through December 14, 1965. Also medical expenses in the amount of $795.00 were paid. A trial on the merits resulted in a judgment in favor of the plaintiff awarding her compensation for total and permanent disability at the rate of $35.00 per week for a period of 400 weeks beginning July 27, 1965. The judgment awarded the defendants credit for compensation already paid. The costs of court and expert witness fees in the following amounts were also charged to the defendants: Dr. Paul Robertson, $15.00; Dr. Byron Unkauf, $160.00; Dr. Russell C. Grunsten, $100.00; and Dr. William A. Roy, $100.00. From this judgment defendants appeal suspensively.
Mrs. Schumacher was employed by Wer-than Bag Corporation for many years prior to her injury. At the plant, she had worked as a sewing machine operator, a clipper, and a turning machine operator. She had also done other tasks in the production of bags, but the majority of her experience was with clipping the seams of finished bags and operating the turning machines. The day of the accident Mrs. Schumacher was in the act of picking up misprinted bags from the rear of the factory and transporting them on a four-wheeled hand-truck to the pressman. As she pulled the truck by its rope handle, another employee accidentally backed into her causing her to fall and break her wrist.
The injury to the right wrist stemmed from a partially displaced comminuted fracture to the distal radius and to the tip of the ulna. (The injury related to the wrist end of the two long bones of the forearm.) When the plaintiff was initially treated by Dr. Roy, she was given a local anesthetic, *767 the arm was manipulated into the correct position and put into a cast.
That same day she had to have the original cast split open because of swelling and later a new cast was applied. The fracture which is the basis of this suit has resulted in a deformity which is manifested by some shortening of the radius.
Mrs. Schumacher was originally treated by Dr. William Roy. He referred her to Dr. Russell Grunsten for evaluation after he had treated the injury. Dr. Grunsten submitted the following testimony from his records as to the result of the plaintiff’s injury:
« * * *
“By the time I saw her this lady (sic) presented some deformity to the wrist. The deformity (was) manifested by some shortening to the bone on the thumb side of the forearm. She had restriction in motion of the wrist region having approximately 60° to 70° of the normally anticipated motion. The fingers themselves hadn’t normal mobility on this occasion.
“We had X-ray studies that identified the presence of the cominuted fracture, the reduced position of this fracture into satisfactory and acceptable alignment and the healing of the fracture.
“At that time my recommendations were as follows: It is recommended this patient be encouraged in actively using this hand as soon as possible as day to day use represents the best form of rehabilitation with the patient’s exercise program enhanced by use of supervised physiotherapy.
“Permanent disability is apparent and it was recommended that more current X-rays be made to verify the clinically apparent healing of the fracture in a medical sense.
“I subsequently saw her again on December 6th, which would have been about a month and a half later and on this occasion she still had the apparent shortening. She had restricted motion in the wrist, identified as a loss of 15° flexion of the wrist and loss of between 20° and 25° of bending the wrist backwards; dorsiflexion, the ability to turn the hand up and down, to suppinate and pronate the forearm, was restricted with a loss of 30°. She had residual thickening typical with this sort of injury; she had J4 inch decreased circumference of the right forearm muscle and it should be noted this lady is right-handed. This represents atrophy of more than 14 inch, really.
“It was felt under these circumstances, after this examination that this patient should be encouraged in resuming as much as possible her normal day to day working activities. In view of the patient’s — and again I am quoting from this report — in view of the patient’s description of her working activity we felt she will have a little difficulty in returning to this type of work. The more strenuous parts of it should be curtailed for a while. It' is suggested she be permitted to return to work on a daily working status on a limited basis. This would assist her in working with residual soreness and stiffness.
“At this time this patient represents 25 to 30% disability of the hand and wrist. We would expect a little improvement, not a lot. In identifying the disability status the actual loss of mobility amounts to 20 or 25% in relation to the hand and wrist. The extra 5% is because it is the dominant side.”
Trial record pp. 79-81.
Dr. Roy agrees with Dr. Grunsten’s diagnosis.
The only other physician who testified was Dr. Byron Unkauf. He recommended a Baldwin type operation to remove the protuberance of the ulna styloid. He agreed *768 with the extent of injuries as testified to by the treating physicians. Thus, all the medical testimony is without conflict except for the operation recommended by Dr. Un-kauf. Although Dr. Grunsten disagreed with the Baldwin procedure as it would not offer the relief sought by Mrs. Schumacher, this conflict is not material to the issue presently before us.
Since the accident Mrs. Schumacher has returned to work and has at the time of trial worked some eleven months at the bag factory. The record reveals however that she has experienced pain and discomfort while working and she is no longer able to perform adequately as a turning machine operator. Because of her disability she has performed what may be described as lighter work than previously undertaken by her.
The interpretation of permanent disability is well settled in this State. As recently restated by this court in Hamilton v. New Amsterdam Casualty Company, La.App., 208 So.2d 158, 160, a worker is not required to work in substantial pain:
“The trial judge based his award of partial disability on the statement of Dr. Accardo that plaintiff would have a 10% disability of the hand after the operation. However, this percentage of disability is not determinative of plaintiff’s present condition. Even if a percentage of disability could be determined with regard to plaintiff’s present injury, it would not alter the fact that he can only perform the duties of a common laborer with great pain. It has been held that when a worker cannot perform the substantial duties of his former occupation or can only perform them in substantial pain, such a worker is totally and permanently disabled for workmen’s compensation purposes irrespective of .the medical percentage of the loss of use of the affected member. McGee v. Reimers-Schneider Co., La.App., 102 So.2d 566, and the cases cited therein. The same result was reached in Lavergne v. Southern Farm Bureau Casualty Insurance Co., La.App., 171 So.2d 751, where the compensation claimant had only an 8% partial disability of the hand. Therefore, we conclude that plaintiff is presently totally and permanently disabled.”
We likewise have no choice but to conclude that Mrs. Schumacher is totally and permanently disabled. There is no question that she can no longer turn out finished bags on a piece-work basis as well as before the disabling injury.
The record in this case is replete with substantiating evidence in favor of the judgment originally awarded the plaintiff and we affirm the compensation award as ordered by the court a qua.
We differ, however, with the expert witness fees as ordered by the lower court. The judgment indicates that Dr. Byron Unkauf was awarded $160.00 when the two other doctors who testified at the trial were awarded $100.00, and Dr. Paul Robertson was awarded $15.00 when there was no evidence showing he either testified for or treated the plaintiff. On the basis of the trial record which shows that Dr. Unkauf testified that he only charges $100.00 to testify as a medical expert we see no reason to award him a fee in excess of the other experts.
We find no evidence to substantiate an expert witness fee to be awarded in favor of Dr. Paul Robertson. Accordingly the judgment of the lower court is amended to set the fee of Dr. Byron Unkauf at $100.00 and delete therefrom the award of $15.00 made to Dr. Paul Robertson; and as amended the judgment is affirmed. All costs of the appeal to be borne by defendants-appellants.
Amended, and as amended, affirmed.