280 So.2d 403 (1973)
John TARANTO
v.
KAISER ALUMINUM & CHEMICAL CORPORATION.
No. 5691.
Court of Appeal of Louisiana, Fourth Circuit.
June 19, 1973.
Rehearing Denied July 3, 1973.
*404 Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Paul B. Deal, New Orleans, for defendant-appellant.
Law Office of Emile L. Turner, Jr., by Emile L. Turner, Jr., David M. Packard, New Orleans, for plaintiff-appellee.
Before GULOTTA, STOULIG, and BOUTALL, JJ.
GULOTTA, Judge.
This is an appeal from a judgment in a workmen's compensation suit awarding plaintiff total permanent disability benefits as a result of an accident arising out of and in the course of plaintiff's employment at Kaiser Aluminum & Chemical Corporation on January 14, 1970.
There is no dispute as to the occurrence of the accident or that plaintiff's injury arose out of and while in the course of his employment. The issue is the extent of the disability. Plaintiff claims he is entitled to workmen's compensation based on total and permanent disability while defendant claims plaintiff's disability is only permanent partial. The trial judge found permanent total disability, and defendant appeals.
The facts are that plaintiff suffered third degree burns of the popliteal (the back of the knee) area of both legs while employed as an anode[1] man at Kaiser.
Medical testimony presented showed that the burns covered areas of 5" × 5½" and 5" × 3" on the left and right legs respectively. Plaintiff obtained skin grafts on March 6, 1970 and convalesced from January 14, 1970 through August 17, 1970, during which time he was paid workmen's compensation and was provided medical treatment at defendant's expense. On August 17, 1970, Taranto returned to light duty work, at the suggestion of Dr. Richard Vincent. Since that time, he has been performing light duty work such as hosing down the courtyard, shoveling, cleaning restrooms and other odd jobs. At no time, since the return to light duty work, has plaintiff returned to the duties of an anode man, the position in which he was working at the time of his accident.
It was agreed in argument that Taranto's disability is to be measured in relation to his ability to return to his former employment as an anode or pot man, not in relation to return to the former employment of an unskilled laborer.
The trial judge in concluding that plaintiff is permanently and totally disabled stated in well written reasons for judgment that he was convinced by the evidence that plaintiff was incapable of performing the duties of an anode man.
The evidence is clear and convincing in support of the conclusions reached by the trial judge.
Dr. Richard Vincent, a plastic surgeon and plaintiff's treating physician, testified that while Taranto could do some physical work for a short period of time (i. e., an hour or two), he did not believe plaintiff could stand on his feet for a period of four to six hours without discomfort. He indicated plaintiff would continue to experience a tightness in the graft area, and this would be of a permanent nature. Dr. *405 Vincent was of the opinion that plaintiff would be less agile; and were plaintiff subjected to heat,[2] this would cause some tenderness in the burned area of the legs.
The two orthopedists who testified were in agreement as to the percentage of permanent disability to plaintiff's legs, rating the disability to the right leg at 5 percent and that to the left leg at 15 percent.
Dr. Stuart I. Phillips, one of the orthopedic surgeons, testified that he saw plaintiff on December 17, 1970. He observed that Taranto was unable to squat because of pain in the affected area. He testified that though the skin grafts had healed, there remained limitation of motion in both extremities as well as inelasticity of the skin. It was his opinion that the plaintiff was unable to perform tasks requiring physical activity over a long period of time, and that he was unable to perform duties which would require him to stoop for an extended period of time. On March 4, 1971, the plaintiff was again seen by Dr. Phillips; and at that time, complaints of difficulty in climbing stairs were made. When the description of potroom work was given Dr. Phillips opined that plaintiff would have pain if the procedure (climbing stairs) was repeated in the course of his employment. He further corroborated Dr. Vincent that Taranto would be less agile because of the injury.
When questioned as to plaintiff's ability to compete with other 29 year old potroom workers, Dr. Phillips testified that plaintiff would not be able to perform as well as someone of the same age, height and ability who had not suffered plaintiff's injuries. He further stated the graft areas would be highly susceptible to re-injury.
Dr. Kenneth Saer, also an orthopedic surgeon, who examined plaintiff one time on March 2, 1971 some 14 months after the accident, testified that plaintiff was able to return to his former occupation of an anode worker. We fail to find any significance to his testimony, however, for when questioned as to the duties of an anode worker, Dr. Saer admitted that he did not have any knowledge of the job description. He did, however, testify that plaintiff could not tolerate heat as a normal person, and the skin in the area of the burn would be more susceptible to re-injury and burn than normal skin. He further indicated in extreme heat the burned area of the extremity would be more sensitive.
Plaintiff testified that even while performing light duty work he experienced pain in his legs. He further stated that he had difficulty climbing stairs; and when standing or walking for any prolonged period of time, his legs "ached". Plaintiff further complained that on one occasion when he was required to be in a heated area, while doing light duty work, the skin grafts began to burn.
The jurisprudence is well settled that irrespective of the percentage of disability or loss of the use of a limb, if the injured worker cannot perform the substantial duties of his former occupation or can only do so in substantial pain, he must be declared totally and permanently disabled.[3]
After hearing and observing the witnesses, the trial judge weighed the credibility of the medical evidence and accepted the testimony of plaintiff's experts holding that plaintiff is totally and permanently disabled from returning to the work of an anode man. We find no error in this conclusion. Accordingly, the judgment is affirmed. Costs are to be paid by defendant-appellant.
Affirmed.
NOTES
[1] According to the testimony of plaintiff and William E. Crates, safety and security supervisor at Kaiser, an anode man is essentially a person who operates a "pot", one of the devices for making aluminum. This job involves ten days of on the job training and involves having to lower and raise the anodes in an electrolytic cell. The job requires working under intense heat and also requires one to climb stairs and place one leg into the pots from time to time. It is a form of relatively heavy labor and two men usually work together as a team.
[2] Plaintiff testified that the temperature in the pots near where he was required to work ranged between 180 and 220.
[3] Schumacher v. Werthan Bag Corporation, 211 So.2d 765 (La.App. 4th Cir. 1968).