390 So.2d 243 (1980)
Larry Paul GASPARD, Plaintiff and Appellee,
v.
AETNA INSURANCE COMPANY, Defendant and Appellant.
No. 7624.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1980.
Rehearing Denied December 1, 1980.
*244 Donovan & Lawler, James L. Donovan, Metairie, for defendant and appellant.
Michael J. Johnson, Cottonport, for plaintiff and appellee.
Before CULPEPPER, and C.J., DOMENGEAUX and CUTRER, JJ.
CULPEPPER, Chief Judge.
This is an action for workmen's compensation benefits. Plaintiff, Larry Paul Gaspard, alleges that he is totally and permanently disabled from an accident sustained on November 7, 1977 while working for the Avoyelles Parish School Board. Defendant Aetna Insurance Company, workmen's compensation insurer for the employer, denies that plaintiff's disability arises out of the November 7, 1977 accident. The trial court granted judgment in favor of plaintiff, finding he is totally and permanently disabled and awarding $115 per week beginning November 7, 1977 for the duration of the disability. Penalties and attorney's fees were denied. Defendant appealed. Plaintiff did not appeal nor answer the appeal.
The issues are: (1) Was plaintiff's disability caused by the accident on November 7, 1977? (2) What is the extent of plaintiff's disability? (3) Was the trial court correct in awarding expert witness fees for trial testimony where the medical experts did not appear at the trial?
Larry Paul Gaspard is 35 years old and has a high school education plus two semesters of college. His employment history includes working as a warehouseman for CLECO, an insurance adjustor, a lift operator *245 for Reynolds Aluminum Company, and service in the Louisiana National Guard. All of these jobs have involved either great physical exertion or extended periods of sitting and driving. He qualified for an instructor's job with the Avoyelles Parish School Board on the basis of six yeas Louisiana National Guard training as a heavy equipment operator.
On November 7, 1977, plaintiff Gaspard was instructing a student in the operation of a bulldozer when the student suddenly locked the gears and forcibly snapped plaintiff backwards against the metal instructor's seat. The following day, plaintiff experienced "severe shooting pains" in his right leg. He reported his injury to his employer and sought medical assistance from Dr. Douglas Gamburg, an orthopedic surgeon. After diagnosing a lumbo-sacral strain, Dr. Gamburg recommended conservative treatment and saw plaintiff four times between November, 1977 and July, 1978. Plaintiff had to restrict his activity but stayed on the job for the school year.
In July of 1978, plaintiff attended summer camp in connection with his duties in the Louisiana National Guard. After participating in a five mile hike, plaintiff experienced severe pain. The day after the hike, he consulted Dr. Gamburg, who continued plaintiff on the previous treatment and advice.
On August 2, 1978, plaintiff consulted Dr. C. B. Fresh, a neurological surgeon, who diagnosed a herniated disc. Dr. Fresh performed surgery on September 5, 1978 and removed part of the L5-S1 disc. Plaintiff showed improvement in October, 1978, but his condition deteriorated and further surgery was recommended. Plaintiff has not worked since his surgery.
The trial court found as a fact that plaintiff sustained an accident on November 7, 1977 while in the employment of the Avoyelles Parish School Board, and that the accident is a cause of his present total and permanent disability. The court specifically found that the disability originated from the accident at school and not from the National Guard activities.
Defendant argues the trial court erred in its findings of fact as to the causal relationship between the November 7, 1977 accident and the present disability. Defendant further disputes the finding that plaintiff is totally and permanently disabled.
It is well settled that factual conclusions of the trial court must be given great weight by a reviewing court. Canter v. Koehring, 273 So.2d 716 (La.1973). The trial court's findings of fact should not be disturbed on appeal unless they are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1331 (La.1978).
At trial, plaintiff introduced into evidence the deposition of Dr. C. B. Fresh, who testified as follows:
"Q. Now, it's your professional opinion that the walking in and of itself without any field pack would have no problem?
A. I wouldn't think-I wouldn't expect it to. No sir.
* * * * * *
Q. As of September 15, 1978, were you not of the opinion that the summer activity at camp precipitated this ruptured disc? Completely ruptured the disc?
A. That that in and of itself alone?
Q. Yes, sir.
A. No, sir. I don't recall having that opinion.
* * * * * *
A. If I remember what you just said a minute ago, you asked me if I felt that that was the sole cause.
Q. No, not the sole. The precipitating cause and the events that followed?
A. I think this statement more accurately assesses what my opinion was. He had a prior problem with his back-I think the whole paragraph does.
Q. Yes, sir.
A. And then I think that with the old saying, the straw that broke the camel's back, I think probably that *246 precipitated the final event and converted him from somebody who was having intermittent pain problems to one that was a persistent pain problem.
Q. Would it be fair to say then that in your opinion-and I'm not putting words in your mouth, you can answer-that the gentleman had a problem that caused intermittent pain and the summer activity brought on a greater degree of permanent pain?
A. The pain that he was having before and after the summer camp activity was the same as far as the type, the location and the nature of the pain. He was having pain on an intermittent basis before. His pain was a persistent type of pain, one that he had pretty much from the time that this occurred until the time I saw him. So that I think that the events at summer camp did make a difference. It did convert an intermittent problem to a persistent problem.
Q. Which required surgery?
A. Right.
. . . . .
Q. The problem was still there?
A. The problem was still there.
Q. And you feel in a situation of this sort it was super-imposed upon by summer activity at camp?
A. Yes. He was having symptoms prior to going to camp, so I think probably what happened at camp was the super-imposed problem.
Q. Which brought about the surgery?
A. That's correct.
* * * * * *
Q. Now, if I understood your previous testimony, you would rule out him going back in the type of employment he was in, would you not?
A. In the condition that he's in now.
Q. Is it your thought that with surgery and coming out the way it would hope to be that he could return back to the type of job he was doing prior to his injury?
A. I think that would be a possibility, sure.
Q. Failing in that, do you feel he could be gainfully employed in other fields, excluding the field in which he was injured?
A. At this present time or in the future?
Q. In the future-or at the present time?
A. The problem he has right now that would I think impair him from performing most jobs is the fact that he's uncomfortable with sitting for any length of time, standing for any length of time, any type of physical activity, particularly bending or lifting or twisting. And I'm not really aware of any job that he could do that wouldn't involve one of these things that does make him uncomfortable. So I think he could not reasonably work in any capacity pain free, because he's not pain free at home.
Q. Would in your opinion this preclude an administrative job where he would-you know how we all work, how your secretaries work, you sit-would it preclude that sort of thing?
A. I think the amount of discomfort he has sitting could interfere with his ability to do that type of job."
Defendant introduced the deposition of Dr. Gamburg. His testimony related entirely to his diagnosis and treatment through July 28, 1978, after which Dr. Gamburg never saw plaintiff again. He stated that he could not diagnose a disc injury, and believed that plaintiff suffered from a degenerative disc disease.
Considering the above medical testimony, we find there is sufficient evidence upon which the trial court could have concluded that plaintiff's disability resulted from the November 7, 1977 accident.
*247 The next issue is whether plaintiff is totally and permanently disabled within the meaning of LSA-R.S. 23:1221(2). In the recent case of Whitaker v. Church's Fried Chicken, Inc., 387 So.2d 1093 (La.1980), our Supreme Court held that a janitor, who was a "marginal employee", was totally and permanently disabled within the meaning of the above cited 1975 amendment to the Workmen's Compensation Act, where he could not perform the same kind of work he was performing at the time of the injury except by working in substantial pain. The court stated that after the accident, the janitor was "as a practical matter ... unable to engage in any gainful occupation for wages." Justice Marcus concurred, on the basis that he considered an employee totally and permanently disabled when he encounters substantial pain in every occupation for which he is qualified, and that the evidence showed the janitor, because of limited education, was unable to engage in non-physical occupations.
Although the plaintiff in the present case has a high school education plus two semesters of college and prior work experience in non-physical employment, the above quoted testimony by Dr. Fresh, the only medical expert to address the issue, is that, because of pain in his back, the plaintiff could not work without substantial pain in any job which required physical activity or standing or sitting for any length of time. There being no evidence to the contrary, we conclude that under the rules set out in Whitaker, the evidence here is sufficient to support a holding that plaintiff is totally and permanently disabled.
Of course, if plaintiff has the recommended surgery and his disability diminishes, defendant can, any time six months after rendition of the judgment appealed, seek modification of the judgment under LSA-R.S. 23:1331.
The defendant also complains of an error in the award of expert fees. The trial court judgment provides as follows:
"Expert witness fees are set at $75.00 for deposition appearances and $150.00 for courtroom appearances and are to be taxed as costs; defendant is cast for all costs in this proceeding."
Defendant contends the awards of $150 for court appearances are improper, since the experts did not in fact testify at trial. We agree.
Under LSA-R.S. 23:1317, plaintiff is entitled to have the expert fees of the physicians who testified by deposition and whose depositions were used in the trial fixed by the court and to have these fees taxed as costs. Mathews v. Milwhite Mud Sales Company, 225 So.2d 391 (La.App. 3rd Cir. 1969), on rehearing. This statute and LSA-R.S. 13:3666 also allow for compensation for expert witnesses called to testify in court to be taxed as costs. We find no authority, however, for allowing costs for a court appearance when none was made. The record shows the testimony of the medical experts was introduced by deposition only. Therefore, we allow the award of $75 for depositions and reverse the separate award for court appearances. Schumacher v. Worthan Bag Corporation, 211 So.2d 765 (La.App. 4th Cir. 1968).
Plaintiff argues in brief the trial court erred in allowing defendant certain credits and in denying penalties and attorney's fees. However, plaintiff neither appealed nor answered the appeal. Therefore, we cannot modify, revise or reverse the judgment in his behalf. LSA-C.C.P. Article 2133. Boswell v. Roy O. Martin Lumber Company, Inc., 363 So.2d 506 (La. 1978).
For the reasons assigned, the judgment appealed is amended to delete the awards of $150 for each physician for courtroom appearances. Otherwise, the judgment is affirmed at appellant's cost.
AFFIRMED, AS AMENDED.