444 So.2d 166 (1983)
Lawrence MACKIE, Sr.
v.
CROWN ZELLERBACH CORPORATION.
No. 83 CA 0233.
Court of Appeal of Louisiana, First Circuit.
December 22, 1983.
*167 Joseph Gladney, Baton Rouge, for plaintiff.
William A. Norfolk, Baton Rouge, for defendant.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
ALFORD, Judge.
This is a worker's compensation suit filed by plaintiff-appellee, Lawrence Mackie, Sr., against defendant-appellant, Crown Zellerbach Corporation, claiming disability as a result of a back injury sustained on June 2, 1980, within the course and scope of his employment.
After a trial on the merits, in an excellent seven page written opinion, the lower court found the plaintiff partially disabled and awarded Mackie appropriate benefits. Penalties and attorney's fees were denied. The defendant has appealed the judgment in favor of plaintiff alleging only one specification of error. It is Crown Zellerbach's contention that the trial judge erred in concluding that plaintiff sustained an on-the-job injury. The plaintiff has not appealed the decision below, nor has he answered defendant's appeal. As such, we are powerless to modify or change the judgment in his favor. La.C.C.P. art. 2133; Gaspard v. Aetna Insurance Company, 390 So.2d 243 (La.App. 3rd Cir.1980), writ denied, 396 So.2d 909 (La.1981). Thus, the only issue on appeal is whether or not the evidence supports the conclusion that plaintiff's back injury was job related.
We are fortunate on appeal to have at our disposal the trial judge's written reasons for judgment. These reasons are complete, well-written and adequately describe the factual context of this case and the factors which influenced the trial judge to hold for the plaintiff. As such, we will *168 adopt a considerable portion of the trial judge's opinion as our own, and quote his opinion as follows:
On the day of the accident, plaintiff reported to work at approximately 7:00 a.m. and received his orders for the day. By 7:15 a.m. the plaintiff testified that he was on the job, beginning by emptying all the trash baskets. After emptying the trash baskets, the plaintiff was going to mop, but the mop bucket was full of dirty water that had been left from the night before. Plaintiff alleges that he injured his back when he lifted this bucket to empty it into the sink. Plaintiff related that this was when he felt a "funny pain across my back" that started a half an inch or more above the belt line in his lower back, and continued around to the bottom of his stomach and onto the thigh of his left leg. After experiencing this pain, plaintiff tried to continue with his work, but the pain was too great.
When plaintiff felt he was unable to continue with his duties, he reported to his foreman, Julius H. Lacey, Jr., and to the nurse at the mill's first aid office, Elizabeth Turnley, that he was returning home because he did not feel well. When the plaintiff was questioned as to why he did not report that he had received an on the job injury at this time, he responded that he believed that he had just pulled a muscle or had aroused a prior hernia problem, but that with rest he would be better and could return to work.
This "sickness in his stomach" led to numerous medical appointments for the plaintiff, beginning the day following the accident. On June 3, 1980 the plaintiff saw Dr. Jerry Stone and Dr. Alfred Holden, who both examined the plaintiff only to find nothing concerning any hernia symptoms. Nothing was mentioned by the plaintiff to either of these doctors as to the origin of the pain about which he was complaining.
Plaintiff next had an appointment with Dr. James T. Bernard on June 4, 1980 whose report states that the examination performed did not reveal the cause of the plaintiff's pain and that the condition was not related to employment. The report also states that prolonged rest by the plaintiff from his job might cause the pain being experienced by the plaintiff to subside in order that he can resume his usual work duties. Nothing again was related to this physician concerning the on-the-job accident.
Beginning in the latter part of June, plaintiff had two appointments with a Dr. McKinnon at Ochsner Clinic in New Orleans. This doctor injected some fluid into the area of the plaintiff's previous hernia surgery to relieve the pain, but was unable to detect the cause of the pain. Testimony by the plaintiff did not reveal any mention of an accident on the job to this physician in order to assist him in locating the cause of the plaintiff's pain. It seems as though the symptoms and assistance given by the plaintiff to this physician also was limited to the facts and circumstances surrounding the plaintiff's previous hernia operation, and what he suspected as post problems.
Plaintiff's next doctor's appointment was in the first part of August with Dr. John McCutchen in Houston, Texas. Plaintiff had three appointments with this doctor over the course of six weeks, during which time the doctor diagnosed the plaintiff's condition as having two ruptured discs and performed a discogram, a myelogram and x-rays on the plaintiff to confirm this diagnosis. Dr. McCutchen preferred not to perform surgery and directed the plaintiff first to abstain from any activity and later prescribed certain exercises for the plaintiff.
The first time plaintiff mentioned the activities which occurred on June 2, 1980 concerning the lifting of the bucket of water and the resulting pain was to Dr. McCutchen. Prior to being examined by Dr. McCutchen, the plaintiff had been examined by four physicians in an effort to determine the source of his pain. The Court notes the difficulty in rationalizing the reasons for the plaintiff's silence until *169 months later and can understand the reluctance on the part of the defendant in light of the fact that an accident report was not filed with the plaintiff's foreman as to the on-the-job injury until four or five months after the incident occurred and also after numerous doctors had been consulted. The plaintiff explained that due to the questions asked him by Dr. McCutchen he realized the importance of the events of June 2, 1980 to his present condition and, therefore, described the events thereof to Dr. McCutchen.
On plaintiff's last visit to Dr. McCutchen he was told that he could now do light work. At this time, plaintiff contacted Douglas Robson at Crown Zellerbach, who at that time was the safety coordinator, and explained to him the bucket incident and the resulting pain and back trouble. This was in August of 1980. When asked if there was any light work available at the mill, Robson responded that he did not know of any at this time. Dr. McCutchen had told the plaintiff that driving a taxicab was the type of light work he was referring to, if not done for too long of a period at one time, so plaintiff began driving his brother's taxicab four to five hours a day.
On November 16, 1980 the plaintiff had the first of five appointments with Dr. Kenneth Vogel of New Orleans. Dr. Vogel was also told of the events of June 2, 1980 by the plaintiff during the course of the examination. In the course of these five appointments, Dr. Vogel confirmed the ruptured disc diagnosis given by Dr. McCutchen and performed surgery on the plaintiff. Dr. Vogel, on December 29, 1980, performed a lumbar laminectomy at plaintiff's L4-5 and L5-S1 levels and lumbar facet rhizotomy at his L3, L4 and L5 levels.
Concerning the disability suffered by the plaintiff as a result of the ruptured discs, both Dr. Vogel and Dr. R.C. Llewellyn, who examined the plaintiff on January 20, 1982 at the request of the plaintiff's attorney, found the plaintiff totally disabled for heavy labor, permanent anatomical disability of 15% due to the surgical removal of portions of two discs, and now able to perform light work.
It was Dr. Vogel's opinion that in all medical probability the incident of June 2, 1980 was the precipitating factor which caused the plaintiff's subsequent pain and resulted in the necessity for surgery. Dr. Llewellyn also agreed that picking up a heavy bucket of water could have brought on the major disc problems experienced by the plaintiff.
Also of importance to the Court was the testimony of Elizabeth Turnley, the Crown Zellerbach nurse, who related to the Court that on June 2, 1980 when the plaintiff reported he was going home because he was not feeling well, he was holding his lower abdomen. Mrs. Turnley stated that she could recognize manifestations of pain, and the plaintiff appeared to be in pain in the groin area.
Various friends and relatives testified on behalf of the plaintiff and the conditions they observed. Bennett Mackie, Sr., plaintiff's brother, testified that on June 2, 1980 when asked why he was at home the plaintiff said that he was in pain because he had lifted something heavy at work. Andrew Hargrove, plaintiff's cousin, stated that he sees plaintiff two to three times a week, and that the day after the accident the plaintiff told him that he had reinjured his hernia when he was attempting to empty a bucket of water at work. Thomas Joseph, a friend of the plaintiff for ten years, testified that when he spoke to the plaintiff about ten days after the June 2, 1980 incident, plaintiff told him that he had sustained an injury to his back at work when he lifted something heavy, and later identified this heavy object as a bucket of mop water. Annette Mackie, plaintiff's wife, testified that when the plaintiff returned home on the morning of June 2, 1980 holding his abdomen, he told her he was attempting to lift a bucket of mop water when he felt a funny pain on his side. He told her that he tried to keep working but the pain continued *170 and he could not continue with his work.
Each of the above witnesses testified that the plaintiff's complaints of pain have continued up until the present, although have decreased somewhat since the December surgery.
During the course of the trial, much was said about the fact that the plaintiff did not report an on-the-job accident until November 21, 1980 when Crown Zellerbach received the first report from the plaintiff. Douglas Robson testified that Crown Zellerbach could not accept plaintiff's injury as a workmen's compensation injury in view of the fact that an accident report was not given at the time of the alleged injury, or nothing said until months thereafter, and the fact that the doctors' reports received by Crown Zellerbach stated that examinations performed on the plaintiff did not reveal the cause of plaintiff's pain and there is no history of a distinct back injury. This silence on the part of the plaintiff concerning his injury to his employer is truly strange in light of the fact that numerous friends and relatives testified about their knowledge of the bucket lifting incident within a few days of June 2, 1980. Questions may also rise as to why the plaintiff failed to mention to his foreman or to the nurse on the day he left work the pain he suffered after lifting the bucket of mop water, but instead related that he did not feel well and held his groin area. Testimony by the plaintiff revealed that it seemed perfectly reasonable and acceptable to him that the pain he was suffering stemmed from a prior hernia, and thus a few days rest was all he required before he would be able to resume his usual work duties. This prior hernia history could also account for the failure of the first few doctors who were consulted to suggest more extensive examinations to find the source of the plaintiff's pain even when their treatment seemed to give no relief.
It is the opinion of this Court that the plaintiff did suffer an injury while on the job, which injury has rendered him partially disabled to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he is fitted by education, training and experience. This determination by the Court is also reasonable when considered in light of the plaintiff's approximately ten years of service as a laborer at Crown Zellerbach and the fact that manifestations of pain were observed by the nurse when the plaintiff left work on June 2, 1980. This conclusion is also consistent with the failure of the plaintiff to report his on the job accident to his employer when one considers his past hernia difficulties and the failure of numerous doctors to pinpoint the true source of the plaintiff's pain.
In essence, we are dealing with the fact of accomplished disc surgery, ten years of previous heavy labor at Crown Zellerbach, an acute pain and its manifestation to the trained nurse on the date in question and no indication that injury resulted from other sources. It is a very close case because of the events following the injury, but on the standard "more likely than not" plaintiff has sustained his burden.
Attorney fees and penalties will be denied.
On appeal, the appellant presents only one issue for our consideration: whether or not the plaintiff proved a compensable accident in the course and scope of his employment with the defendant. We think he did and we think the trial judge's determination in this respect is supported by the evidence.
The appellant submits that the defendant's story as to the occurrence of the accident is not to be believed. Yet, the trial judge felt as if the evidence presented supported the plaintiff's version of the facts and we do not feel as if we are in a better position to judge the witnesses' credibility than the district court. It is well settled that in a worker's compensation proceeding, the reviewing court must give *171 great weight to the factual conclusions arrived at by the trier of fact, and the reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. Clinton v. American Mutual Liability Insurance Co., 422 So.2d 570 (La.App. 3rd Cir.1982). We have read the transcript and the numerous depositions, reports and other exhibits in this case and we feel the trial judge's evaluations and inferences are not only reasonable, but are quite correct.
Appellant's chief defense is that the plaintiff did not report the existence of an accident and resulting injury to the nurse when he left the mill for the day. The trial judge adequately addressed this issue. We will simply add that the potential worker's compensation claimant should not be barred from recovery because he does not realize or diagnose the full extent of his injury immediately after its occurrence. In this case, the plaintiff's explanation of the accident and his subsequent behavior seem to us entirely reasonable in light of plaintiff's prior hernia operations.
La.R.S. 23:1021(1) defines "accident" for purposes of Louisiana worker's compensation law as:
[A]n unexpected or unforseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury.
Although the issue may have been close in this case, we think the lower court's resolution of the controversy in plaintiff's favor is supported by the evidence. Our review of the entire record convinces us that the district court was not clearly wrong in finding that plaintiff succeeded in proving, by a preponderance of the evidence, the occurrence of a work-related accident. Accordingly, we find no manifest error in the district court's judgment. Arceneaux v. Domingue, 365 So. 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La. 1973).
For the foregoing reasons, the judgment of the district court is affirmed. Costs of this appeal are to be borne by defendant-appellant.
AFFIRMED.