620 So.2d 942 (1993)
Roosevelt CARTER, Jr., Plaintiff-Appellee,
v.
John SMITH, d/b/a Smith's Roofing and Hauling, Defendant-Appellant.
No. 92-1072.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1993.
Order Granting Rehearing in Part July 13, 1993.
*943 Louis D. Bufkin, Lake Charles, for Roosevelt Carter Jr.
James Edward Burks, Lake Charles, for Smith Roofing and Hauling.
Before DOMENGEAUX, C.J., and YELVERTON and SAUNDERS, JJ.
DOMENGEAUX, Chief Judge.
John Smith, d/b/a Smith's Roofing and Hauling, appeals a judgment awarding Roosevelt Carter, Jr. worker's compensation benefits, medical expenses, penalties and attorney's fees. For the following reasons, we find no error in the hearing officer's factual findings that the plaintiff is covered under the worker's compensation law and that the plaintiff sustained a workrelated accident. However, we find that the hearing officer erred in refusing to order the plaintiff to be examined by the defendant's medical expert, Dr. Norman Paul Morin, and in refusing to admit the testimony of Dr. Morin. Therefore, we reverse the judgment in favor of the plaintiff, and we remand the case with instructions described below.

FACTS
Defendant John Smith, an employee of Firestone Tire and Rubber Company, is also the owner of Smith's Roofing and Hauling. For seven or eight years, Smith has hired the plaintiff, as well as other laborers, on his roofing contract jobs. The laborers were each paid $7.00 an hour to remove old shingles plus $8.00 per square (10 square feet), split among the men on each job, to nail on the new shingles. The laborers were paid in cash with no withholding for taxes, and Smith did not have any worker's compensation insurance. The laborers, including the plaintiff, also accepted jobs from other local contractors.
The hearing officer found that Roosevelt Carter, Jr. sustained a tear of his medial meniscus cartilage in the right knee while working on one of Smith's jobs on June 7, 1990. Carter testified that his knee popped and began to swell, with immediate pain, while he was in a bent position nailing shingles. Duncan Barfield, another worker on the job, testified that he heard Carter "holler" and saw him "hopping around" in pain as they worked side by side. Carter testified that he attempted to inform Smith of the injury that day, but he could not reach Smith until two days later. On June 10, 1990, Smith took Carter to Moss Regional Hospital, a charity facility, where the plaintiff was diagnosed as having a meniscus tear of the right knee. The plaintiff later went to the VA Medical Center in Alexandria, another charity hospital, where surgery was performed on October 17, 1990. On April 29, 1991, Carter was released to return to light duty work.
The hearing officer found that Carter was an employee of Smith's, that he sustained a work-related injury on June 7, 1990, and that he was temporarily and totally disabled from that date through April 29, 1991, the day he was released to light duty work. The hearing officer awarded compensation benefits in the amount of $188.68 per week from the date of injury to the date of release, past and future medical expenses, penalties and attorney's fees.

EMPLOYMENT STATUS
The defendant contends the plaintiff is an independent contractor; therefore, the hearing officer erred in finding *944 the plaintiff was covered under the worker's compensation law. The defendant's main argument on this point is that the plaintiff did not work exclusively for Smith's Roofing and Hauling but was free to work for other contractors at the same time that he worked for Smith.
La.R.S. 23:1021(6) provides:
(6) "Independent contractor" means any person who renders service, other than manual laborer, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work-time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter. (Emphasis added.)
The fact that Carter did not work exclusively for the defendant does not preclude an employer/employee relationship. See Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736 (La.App. 1st Cir.1989), writ denied, 553 So.2d 466 (La.1989). However, even if Carter could be considered an independent contractor, he still would be entitled to worker's compensation benefits because most, if not all, of his work was spent in "manual labor," and this labor was a part of the principal's trade, business or occupation. See Rush v. Employers National Ins. Co., 598 So.2d 603 (La.App. 4th Cir.1992), writ denied, 605 So.2d 1364 (La. 1992). We find no error in the hearing officer's conclusion that the plaintiff is covered by the worker's compensation act.

ACCIDENT
The defendant next argues that the plaintiff's injury was not caused by a workrelated accident, but rather it was the result of a gradual deterioration of the plaintiff's right knee. The defendant points out that Carter reported a history of his knee "popping" in the past to hospital personnel. Carter also testified that his knee had been popping in and out for as long as he had been doing roofing work.
La.R.S. 23:1021(1), as amended by Acts 1989, No. 454, defines "accident" as follows:
(1) "Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
In Dyson v. State Employees Group Benefits Program, 610 So.2d 953 (La.App. 1st Cir.1992), the plaintiff's job requirements of prolonged standing aggravated her pre-existing condition of flat feet, creating a "cumulative trauma disorder" of inflammation in the heel. On the day of her accident, while standing at a copy machine, the plaintiff made a turning movement that precipitated the onset of sharp pain in her foot. Finding the plaintiff had sustained a work-related accident, the court stated:
However, as Mrs. Dyson correctly argues, an otherwise healthy employee with a preexisting condition is entitled to benefits if she can prove that her work contributed to, aggravated, or accelerated her injury. This is still the meaning of the last clause of section 1021(1), which requires that an injured employee be able to identify the event marking the time when one can identify an injury. In this case, it was the pivoting movement Mrs. Dyson made. It may be true, as the State has suggested, that Mrs. Dyson might have eventually reached the same point without an identifiable, on-the-job injury. But the suggestion in no way alters the fact that Mrs. Dyson can, and has, identified the moment her preexisting condition became an injury through her accident.
Cases suggesting that the amendments to section 1021(1) were meant to exclude from coverage people like Mrs. Dyson, and many others, who are worn down by their work rather than immediately *945 crippled by it are not consistent with the purpose of the worker's compensation scheme, and are not to be followed. See Nelson v. Roadway Express, Inc., 573 So.2d 591, 595 n. 3 (La.App. 2d Cir.), reversed on other grounds, 588 So.2d 350 (La.1991). Considering the nature of Mrs. Dyson's injury in light of these amendments, we are still able to find that Mrs. Dyson did suffer an accident within the meaning of La.R.S. 23:1021(1), and is, therefore, entitled to worker's compensation benefits.
See also Rice v. AT & T, 614 So.2d 358 (La.App. 2d Cir.1993).
In the instant case, the plaintiff testified that he had just climbed up the ladder onto the roof after taking a break. He began nailing new shingles on the roof, with his knee in a bent position, when it popped, with immediate pain and swelling. Coworkers heard him "holler" and saw him "hopping around." The plaintiff's account of the accident, as corroborated by his witnesses, and the medical records introduced leave little doubt that he sustained the meniscus tear at this point. We find the plaintiff has proved that he sustained a work-related accident under section 1021(1), as interpreted in Dyson and in Rice.

MEDICAL EXAMINATION
The defendant next argues that the hearing officer erred in failing to order the plaintiff to be examined by a doctor of the employer's choosing and in failing to allow the defense's medical expert, Dr. Norman Paul Morin, to testify.
The record reveals that the hearing officer initially ordered the plaintiff to be examined by Dr. Morin. However, the hearing officer apparently rescinded this order after a hearing on the plaintiff's motion to reconsider. We say "apparently" because, although subsequent pleadings indicate that such a hearing was held, the minutes do not refer to a hearing, nor does the record contain a second ruling or a judgment on this issue.
La.R.S. 23:1121(A) provides the following regarding an employer's right to have an injured employee examined by a physician of the employer's choice:
A. An injured employee shall submit himself to an examination by a duly qualified medical practitioner provided and paid for by the employer, as soon after the accident as demanded, and from time to time thereafter as often as may be reasonably necessary and at reasonable hours and places, during the pendency of his claim for compensation or during the receipt by him of payments under this Chapter. The employer or his worker's compensation carrier shall not require the employee to be examined by more than one duly qualified medical practitioner in any one field or specialty unless prior consent has been obtained from the employee.
After ruling on the merits, the hearing officer stated that he denied the defendant's request because the court did not believe the doctor's testimony would be relevant under the facts of this case (i.e., where the plaintiff's present condition was not at issue). The hearing officer also said that allowing Dr. Morin to testify would be a "backhanded" way of allowing the defense to present an expert when the plaintiff did not have the opportunity to see a physician of his choice.
We find neither explanation offered by the trial court is sufficient to deny the employer his right to have the plaintiff examined by a physician of the employer's choice under section 1121. See Kennedy v. Lafleur's Fried Chicken, 571 So.2d 216 (La.App. 3d Cir.1990). The doctor's examination would certainly be relevant, and we find no evidence that the plaintiff was denied the opportunity to consult an expert of his choosing. We will therefore reverse the judgment in favor of the plaintiff, and remand the case, with instructions that only the testimony of Dr. Morin be admitted into evidence. The plaintiff is ordered to submit to an examination by Dr. Morin if he has not already done so.
For the above reasons, the judgment of the trial court is reversed and the case is remanded for further proceedings not inconsistent with this opinion. Costs of this *946 appeal are assessed ½ to plaintiff-appellee and ½ to defendant-appellant.
REVERSED AND REMANDED WITH INSTRUCTIONS.

ON APPLICATION FOR REHEARING BY ROOSEVELT CARTER GRANTED IN PART
PER CURIAM.
Applicant, Roosevelt Carter, submits that the parties are unable to comply with our original opinion ordering applicant to submit to an examination by Dr. Norman Morin because Dr. Morin has retired from the practice of medicine. We therefore amend our previous ruling and order applicant to submit to an examination by a physician of defendant's choosing, in the same specialty as Dr. Morin, at defendant's cost, within a reasonable time from the effective date of this order, if defendant still desires that such an examination take place. Defendant may also introduce into the record the testimony of Dr. Morin that was excluded at trial, if Dr. Morin is available to testify.
In all other respects, the application for rehearing is denied.
SAUNDERS, J., votes to grant the rehearing in full.