640 So.2d 472 (1994)
Tina GUILBEAUX, Plaintiff-Appellant,
v.
MARTIN MILLS, INC., Defendant-Appellee.
No. 93-1359.
Court of Appeal of Louisiana, Third Circuit.
May 4, 1994.
Writ Denied September 23, 1994.
*473 G. Frederick Seemann, Opelousas, for Tina Guilbeaux.
Samuel Robert Aucoin, Lafayette, for Martin Mills, Inc.
Before LABORDE, KNOLL and WOODARD, JJ.
WOODARD, Judge.
This is a worker's compensation case. The issue on appeal from a summary judgment is whether plaintiff suffered an "accident" as defined by the Louisiana Worker's Compensation Law.

FACTS
The facts in this case are not in dispute. Plaintiff, Tina Guilbeaux, had been employed at the Martin Mills plant in Breaux Bridge, Louisiana, since 1986 as a "cut-tube." Her job was to cut the tube-like cloth that forms the fly on men's briefs after binding was sewn on the fly by the person next to her in the production line. In the course of her work, she would cut and stack 96 briefs to a bundle and would produce 144 bundles per day. Each brief would require a twisting motion; namely, to turn to the left to get the material and then turn to the right to deposit the material after completing her job assignment. She would also have to lift bundles of cloth.
On or about April 20, 1992, Ms. Guilbeaux felt a "sharp stabbing pain" when she turned and reached over to cut a fly, but she continued to work. She worked in pain everyday thereafter and complained constantly about her back hurting to her co-workers. She had *474 also previously informed her instructor. Because the pain became progressively worse, gravitating into her buttocks and shooting into her leg, approximately two weeks after the precipitating event, she went to see her family physician, Dr. Purpera. After describing her work history to Dr. Purpera, he opined that the muscles between her ribs were being stretched or possibly torn. When her pain did not improve after two visits, Dr. Purpera referred Ms. Guilbeaux to Dr. John Cobb, an orthopedic surgeon and arranged for an appointment with Dr. Cobb on July 29, 1992. Dr. Cobb noted objective findings, namely, trigger points, and he prescribed physical therapy and medication, including injections. He told her that her pain was caused by her activities at work and instructed her not to return to work while she was taking the medication and engaging in the therapy. The next day, Ms. Guilbeaux informed her supervisor, Ricky Zeno, of Dr. Cobb's diagnosis. She was refused worker's compensation benefits.
On September 2, 1992, Ms. Guilbeaux filed a claim with the Office of Worker's Compensation. The defendant filed a motion for summary judgment on April 21, 1993. It was heard on June 17, 1993. In support of its motion, defendant argued that the "sole question" was whether or not plaintiff suffered an "accident" as defined by La.R.S. 23:1021(1). The hearing officer dismissed plaintiff's claim as a matter of law because the events immediately preceding her disability did not constitute an "accident" as defined by La.R.S. 23:1021(1).
Tina Guilbeaux appeals and asserts the following assignments of error: (1) The hearing officer erred in failing to find that plaintiff suffered an "accident" under La.R.S. 23:1021(1); and, (2) the hearing officer erred when it considered information from Dr. Eugster, when no information from him was admitted into the record of these proceedings.

SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter law. La. Code Civ.P. art. 966; Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981). The party who defended against the motion for summary judgment must have his properly filed allegations taken as true and must receive the benefit of the doubt when his assertions conflict with those of the movant. Schroeder, supra. Only when reasonable minds must inevitably conclude that the mover is entitled to a judgment as a matter of law on the facts before the court is summary judgement warranted. Pellegal v. Dureau, 427 So.2d 55 (La.App. 4th Cir.1983). Summary procedure should be used cautiously and sparingly; any reasonable doubt should be resolved against mover in favor of a full trial. Penalber v. Blount, 550 So.2d 577 (La.1989).

ACCIDENT
An "accident" for the purposes of worker's compensation is defined in La.R.S. 23:1021(1):
(1) "Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
This definition is the result of an amendment to the statute by Louisiana Acts 1989, No. 454, Section 1. Dyson v. State Employees Group Benefits Program, 610 So.2d 953 (La. App. 1st Cir.1992), Rice v. AT & T and Travelers Insurance Company, 614 So.2d 358 (La.App. 2d Cir.1993), and Carter v. Smith, 620 So.2d 942 (La.App. 3d Cir.1993), are similar to the case sub judice, and have interpreted the amendment to La.R.S. 23:1021(1).
In Dyson, the plaintiff was a clerk whose job required her to stand all day making *475 copies at a photocopier. After approximately one month of performing this duty, she began feeling a very light pain in her feet. Two months later, she felt a very sharp pain shoot through her feet as she turned to pick up a bundle of copies. The plaintiff was diagnosed with plantar fascitis, an inflammation of the heel. Plantar fascitis was described as a cumulative trauma disorder, commonly found in persons who, like the plaintiff, are overweight, flat-footed, and are required to stand for prolonged periods of time. Notwithstanding that the root cause of the injury was cumulative trauma, our brethren in the First Circuit held that an accident had nevertheless occurred, finding that the event which precipitated the injury was the turning or pivoting described by the plaintiff. In discussing the recent amendment to La. R.S. 23:1201(1), the court stated:
Cases suggesting that the amendments to section 1021(1) were meant to exclude from coverage people like Mrs. Dyson, and many others, who are worn down by their work rather than immediately crippled by it are not consistent with the purpose of the worker's compensation scheme, and are not to be followed.
In Rice v. AT & T and Travelers Insurance Company, 614 So.2d 358 (La.App. 2d Cir.1993), the plaintiff, who had a history of back problems, was working on the assembly line at AT & T, installing parts in cable telephones. She attempted to push her chair closer to the assembly line, while at the same time twisting and turning to reach the parts to be installed on the telephones. As a result of this movement, she felt a tightness in her back which radiated down into her right leg, causing her leg to go numb. This event was held to be an "accident" under the statute. In so holding, our brethren in the Second Circuit stated that the legislature did not intend to limit the definition of "accident" to only extraordinary exertions.
In Carter v. Smith, 620 So.2d 942 (La.App. 3d Cir.1993), the Third Circuit, citing Dyson and Rice, found that the plaintiff, who had a history of knee problems, suffered a workrelated "accident" when his knee popped while he was in a bent position, nailing shingles on a roof. Moreover, Carter quotes the holding in Dyson that the amendment to La.R.S. 23:1021(1) was not meant to exclude employees who are worn down by their work.
In the case sub judice, Ms. Guilbeaux, like the plaintiffs in Rice, Dyson, and Carter, supra, suffered an injury during her routine work. She can identify the event marking the time the injury occurred, and there were objective findings. Ms. Guilbeaux's undisputed testimony was that on April 20, 1992, while working, she felt a "sharp pain" which she had never felt before and that she was in pain constantly from the time the accident happened through her two visits with Dr. Purpera. Further, Dr. Cobb described her injury as being the result of a cumulative occupational overuse or occupational disease, as was the case in Dyson, commonly found in persons who, like Ms. Guilbeaux, are required to engage in the same body movements at work for prolonged periods of time. He noted that Ms. Guilbeaux's job required her to sit, twist, and rotate as much as one-hundred (100) times each day and that this turning motion at work was the event which caused her injury on April 20, 1992. In discussing this, he said: "I think it's definitely related to what she was doing with her back and her hip at the time ... if she wasn't doing this type of activity, then she likely would not have gotten into this trouble."
We must add our voices to those before us regarding the interpretation of "which is more than a gradual deterioration or progressive degeneration." Surely, this phrase does not relate to an injury which is clearly spurred by work activity, such as that in the case sub judice, but only to non-work related activities. For to interpret it otherwise, would lead to an absurd result as it would negate the very purpose for which the Worker's Compensation Act was instituted; namely, to provide relief to employees whose work has caused them injury and the inability to work.
The fact that Ms. Guilbeaux did not "officially" notify the defendant that she had suffered an accident until more than three months after the date of the alleged injury does not prohibit a finding that she suffered an "accident." In Mackie v. Crown Zellerbach *476 Corp., 444 So.2d 166 (La.App. 1st Cir. 1983), plaintiff injured himself while lifting a mop and did not report the injury as a work related claim until five (5) months later when it was diagnosed by his physician. Similarly, the plaintiff in Mackie notified his employer of his work related injury after his physician had advised him that his work was the cause of his injuries. In affirming the hearing officer's decision, in that case, that the plaintiff suffered an "accident" under the act, the First Circuit stated:
"We simply add that a potential worker's compensation claimant should not be barred from recovery because he does not realize or diagnose the full extent of his injury immediately after its occurrence."
Ms. Guilbeaux gave undisputed testimony that she informed her instructor and coworkers of the injury shortly after it happened and on numerous occasions thereafter; that she informed her employer she was seeing Dr. Purpera because of back pain; and that she first became aware that her pain was caused by her activity at work when Dr. Cobb told her at an appointment three months after the accident, after which, she immediately advised her supervisor of Dr. Cobb's diagnosis.
Likewise, Ms. Guilbeaux should not be barred from recovery because she did not realize or diagnose the full extent of her injury immediately after it happened. Nor should she or any other worker be penalized for trying to work as much as he or she can, despite the pain.
Further, in his questioning of Ms. Guilbeaux, counsel for defendant eliminated every conceivable cause for plaintiff's injury, other than her work, and in fact, offered no evidence of an intervening cause.
Based on the foregoing, we find the hearing officer's ruling to be clearly wrong that plaintiff did not suffer a work-related "accident" under La.R.S. 23:1021(1). We therefore, reverse and remand for further proceedings.

MEDICAL INFORMATION FROM DR. EUGSTER
Plaintiff argues that the hearing officer committed error in considering a medical history questionnaire from Dr. Eugster in which Ms. Guilbeaux stated that the cause of her injury was "unknown" because that questionnaire was not properly introduced into evidence. However, since we are reversing the hearing officer's decision to dismiss plaintiff's claim, this argument is moot.

CONCLUSION
For the foregoing reasons, the judgment of the hearing officer is reversed, and the matter is remanded for further proceedings. Costs of this appeal are taxed against the defendant. All other costs are to be assessed following trial on the merits.
REVERSED AND REMANDED.