610 So.2d 953 (1992)
Muriel DYSON
v.
STATE EMPLOYEES GROUP BENEFITS PROGRAM.
No. 91 CA 1818.
Court of Appeal of Louisiana, First Circuit.
November 20, 1992.
Thibaut, Thibaut, Garrett & Bacot, Charest Thibaut, III, Baton Rouge, for plaintiff-appellee Muriel Dyson.
Jones & Amos, John Mark Tarver, Baton Rouge, for defendant-appellant State Employees Group Benefits.
*954 Before LOTTINGER, C.J., FOIL, J., and COVINGTON,[*] J. Pro Tem.
LOTTINGER, Chief Judge.
This is an appeal by the defendant, the State Employees Group Benefits Program (the State), of a judgment casting it for worker's compensation benefits in favor of its former employee, Muriel Dyson. The State asserts that Mrs. Dyson did not prove that her injury resulted from an accident within the meaning of La.R.S. 23:1021(1), as amended by Act 454 of 1989. Alternatively, the State contends that the benefits awarded Mrs. Dyson were improperly calculated.

FACTS
The facts of this case are actually undisputed. Mrs. Dyson began work for the State as an "Examiner II", a sedentary job in which she typed the information needed to handle benefits claims. Two years later, in March 1990, she began work as a "Clerk III". This job required her to stand all day, except during allotted breaks, at the photocopier making copies. In unrebuttable testimony, Mrs. Dyson stated that she began feeling very light pain in her feet approximately one month after taking on her new responsibilities.
On June 22, 1990, Mrs. Dyson testified that she felt very sharp pain "shoot" through her feet as she turned, or pivoted, to pick up a large bundle of copies. The stack of copies was unusually large because the fiscal year was drawing to a close. The bundle was approximately two feet thick. Normally these stacks were no more than approximately two inches thick. However, Mrs. Dyson also testified that the weight of the copies did not contribute to her episode of pain, but that the turning or pivoting movement alone caused her pain.
Mrs. Dyson notified her immediate supervisor on Monday, June 25th, and was told to take it easy for two days. When Betty Browning, the office manager, returned from sick leave on Wednesday, June 27th, Mrs. Dyson was told to resume her former duties even though her feet were still swollen and painful. On Friday, June 29th, Mrs. Dyson went to see Dr. Kucharchuk, an orthopedic surgeon, who prescribed orthotic lifts for her to wear in her shoes, and who told her not to stand for more than one hour at a time.
This was a restriction that neither Betty Browning nor the State were apparently willing to honor. Mrs. Dyson was fired on July 24, 1990, after her sick leave expired and a pretermination hearing was not resolved in her favor.
Dr. Kucharchuk testified by deposition and stated that Mrs. Dyson has flat feet, making her more prone to foot problems caused by prolonged standing. He further stated that he diagnosed her problem as plantar fasciitis, an inflammation in the heel area common in people like Mrs. Dyson who are overweight, flatfooted, and required to stand on their feet for prolonged periods of time. Dr. Kucharchuk further explained that this is a cumulative trauma disorder that is nonapparent until sufficiently aggravated by, for example, prolonged standing when it becomes apparent by pain. Dr. Kucharchuk stated that Mrs. Dyson's flat feet were not caused by prolonged standing, as that is a developmental defect, but that the work activities she engaged in caused her flat feet to result in plantar fasciitis.
The State contends that these facts show that Mrs. Dyson had a gradual or progressive degeneration of her feet of the type meant to be excluded from worker's compensation coverage by the amendment to La.R.S. 23:1021(1)'s definition of accident because there is no actual, identifiable, or precipitous event marking the development of her condition. The State contends that the sharp pain Mrs. Dyson experienced is insufficient, alone, to constitute an accident because "in every gradual, progressive infirmity there must be some point at *955 which the full-blown condition manifests itself."

ASSIGNMENTS OF ERROR
In its appeal the State assigns as error:
I. The finding that plaintiff-appellee suffered an "accident" within the meaning of La.R.S. 23:1021(1) is legally erroneous: plantar fasciitis is a gradual deterioration or progressive degeneration of the feet.
II. Even assuming plaintiff-appellee suffered a compensable "accident," the Administrative Hearing Officer incorrectly calculated the benefits awarded to plaintiff-appellee.

DISCUSSION
The State argues that Mrs. Dyson's injury did not manifest itself in a way contemplated by the amendments to La.R.S. 23:1021(1)'s definition of an accident.[1] Prior to its amendment, this section read:
(1) "Accident" means an unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury.
After its amendment, the section read:
(1) "Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. (Emphasis supplied.)
The State argues that the sudden onset of pain in Mrs. Dyson's feet does not satisfy the requirement that there be an unexpected, unforeseen, actual, identifiable, and precipitous event because all diseases progress to this point. This argument is wholly lacking in merit. At no time in this case has Mrs. Dyson claimed that the mere onset of her pain constituted an "event" such as that contemplated by the definition of accident. In this case, the "event" would be the pivoting or turning movement Mrs. Dyson made which immediately preceded her pain. It may be true that all diseases progress to this point, but, to follow the State's rationale, this would mean that no disease could be said to result from an "event".
The State also argues, even if the onset of her pain was sudden and traceable to a single event, that Mrs. Dyson's injury is nothing more than a gradual deterioration or progressive degeneration of her already flat feet. In support of its contentions, the State relies heavily upon the term Dr. Kucharchuk applies to plantar fasciitis: cumulative trauma disorder.
The term reflects the development of plantar fasciitis. It is a condition that develops over time as a result of nonapparent stress that will eventually signal the appearance of the mature condition through sudden pain. This, Dr. Kucharchuk testified, is what happened to Mrs. Dyson after standing on her feet for eight hours a day for several months when, upon turning and feeling sharp pain "shoot" through her feet, she became aware of her condition. Dr. Kucharchuk's description of Mrs. Dyson's injury appears to match this latter part of the definition of accident, because her injury is, partially, the result of a gradual deterioration or progressive degeneration of her already flat feet.
However, as Mrs. Dyson correctly argues, an otherwise healthy employee with a preexisting condition is entitled to benefits if she can prove that her work contributed to, aggravated, or accelerated her injury. This is still the meaning of the last clause of section 1021(1), which requires that an injured employee be able to identify the event marking the time when one can identify an injury. In this case, it was the pivoting movement Mrs. Dyson made. It may be true, as the State has suggested, that Mrs. Dyson might have eventually reached the same point without an identifiable, on-the-job injury. But the suggestion in no way alters the fact that Mrs. Dyson can, and has, identified the moment her *956 preexisting condition became an injury through her accident.
Cases suggesting that the amendments to section 1021(1) were meant to exclude from coverage people like Mrs. Dyson, and many others, who are worn down by their work rather than immediately crippled by it are not consistent with the purpose of the worker's compensation scheme, and are not to be followed. See Nelson v. Roadway Express, Inc., 573 So.2d 591, 595 n. 3 (La.App.2d Cir.), reversed on other grounds, 588 So.2d 350 (La.1991). Considering the nature of Mrs. Dyson's injury in light of these amendments, we are still able to find that Mrs. Dyson did suffer an accident within the meaning of La.R.S. 23:1021(1), and is, therefore, entitled to worker's compensation benefits.
Our resolution of this issue requires, however, that we remand the case to the trial court to allow Mrs. Dyson to introduce the necessary evidence to establish the measure of benefits due. It is apparent from this record that the benefits were improperly calculated. Mrs. Dyson is an hourly employee whose average weekly wage is determined differently than that for an employee paid by the month. La. R.S. 23:1021(10)(a) and (b). Because the statute requires that the calculation be made using the average actual hours worked in the four full weeks prior to the accident, the trial court needed four check stubs, rather than the three in evidence, to correctly determine Mrs. Dyson's average weekly wage, and we must remand this case for the introduction of the necessary wage proof, and a proper calculation of the benefits due Mrs. Dyson. La.Code Civ.P. article 2164.

CONCLUSION
Therefore, for the above and foregoing reasons the judgment of the administrative hearing officer is AFFIRMED, and this case is REMANDED for proceedings not inconsistent with this opinion. Costs are assessed against the State Employees Group Benefits Program in the amount of $388.00.
AFFIRMED AND REMANDED.
NOTES
[*] Judge Grover L. Covington, retired, is serving as judge pro tem by special appointment of the Louisiana Supreme Court.
[1] Amended by Acts 1989, No. 454, section 1, effective January 1, 1990.