626 So.2d 565 (1993)
Carrol BOREL, Plaintiff-Appellant,
v.
DYNAMIC OFFSHORE CONTRACTORS, Defendant-Appellee.
No. 93-62.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1993.
Writ Denied January 28, 1994.
Raymond Charles Vinet, Sr., Baton Rouge, for Carrol Borel.
Marjorie Gayle O'Connor, Lafayette, for Dynamic Offshore Contractors.
Before YELVERTON, KNOLL and THIBODEAUX, JJ.
*566 KNOLL, Judge.
This appeal arises from the Worker's Compensation Board's denial of Carrol Borel's claim for worker's compensation benefits. On September 16, 1991, Borel filed a disputed claim for compensation. He alleged that on August 10, 1991, while working in the course and scope of his employment with defendant, Dynamic Offshore Contractors (Dynamic), he injured his neck, shoulders, and back in a work-related accident.
On February 17, 1992, the Worker's Compensation Board held a hearing limited to the issue of whether a compensable accident occurred as contemplated by the Worker's Compensation Act. The hearing officer denied Borel's claim finding that he did not suffer an injury by an actual, identifiable or sudden precipitous event. Rather, the hearing officer determined that Borel's injuries resulted from gradual deterioration over a period of months and denied Borel's claim for compensation benefits.
Borel brings this appeal. For reasons which follow, we reverse and remand.

FACTS
The record shows that Borel worked for Dynamic as a pipe fitter for approximately six months. This job often required him to lift heavy objects and work long hours. As a result, Borel often experienced stress and soreness after his daily work. Less than an hour before quitting time on Saturday, August 10, 1991, he and another fitter, Thomas Milazzo, lifted and cut a pipe, which was 5 inches round, 40 feet long, and was much too heavy for two men to lift alone. Borel estimated the weight of the pipe at over 500 to 600 pounds. The weight of the pipe required that it be lifted with a "stiff leg," a crane that lifts straight up and down. The pipe was then placed on rollers to enable the workers to cut the pipe into five foot lengths with a steel saw. When the pipe would not line up correctly, Borel picked up one side of the pipe to put it on the rollers.
The record preponderates that at the time Borel lifted the pipe, he did not feel any sudden pain. However, as he walked back to his truck to leave the job site, he realized that he was injured because he felt stiffness and pain. At first, he believed the pain was everyday soreness; however, as the evening progressed, the pain in his neck, shoulder, and back increased. Borel admitted that on prior occasions he had experienced a general onset of soreness and pain after a day's work. In this instance, Borel attributed his injuries to lifting the heavy pipe simply because the pipe was the heaviest and last thing he had lifted that day. Borel's wife corroborated his account of the onset of pain, as well as his complaints of pain. On Monday, August 12, 1991, Borel reported the accident and injury to the shop foreman, Leonard Francois, Sr., and to the safety man, Jim Gunter.
Floyd R. Brown, Jr., the superintendent, testified that Borel was a good worker. He also stated that Borel reported the accident to him, but did not relate it to any particular event, other than the day's work. The record shows that Borel had never before suffered injuries to his neck, shoulders, or back, and that he had never filed a worker's compensation claim. Furthermore, Dynamic introduced into evidence Borel's pre-employment physical which showed that he suffered from spina bifida occulta S-1. No medical testimony elaborated upon this finding.
Borel visited Dr. Roy Landry at Gunter's suggestion on three occasions. Dr. Landry limited Borel to light duty work from August 13-18, then returned him to full duty. Borel worked one-half day on August 23, 1991, and did not work thereafter, claiming that the pain continued. He saw several physicians after that even until the time of the hearing at his own expense. Dynamic laid him off in September of 1991 because of a reduction in the work force.

ACCIDENT
Borel contends that the hearing officer erred in failing to find that he suffered an accident at work.
LSA-R.S. 23:1021(1) defines an accident as:
"an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human *567 fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." (Emphasis added.)
This definition, which became effective January 1, 1990, added new elements as highlighted above to the previous definition. As noted in 13 W. Malone & A. Johnson, Worker's Compensation Law and Practice, Sec. 216, 13 La.Civ.Law Treatise (2d ed. 1980, 1993 Supp.), the additional language was clearly intended to reverse the established trend in the jurisprudence to permit coverage for disability which appears to be clearly work-related but does not fit the statutory definition of an accident. See also, Rice v. AT & T, 614 So.2d 358 (La.App. 2nd Cir.1993).
A worker's compensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he sustained injury. Holiday v. Borden Chemical, 508 So.2d 1381 (La.1987). A worker's testimony alone may be sufficient to discharge this burden of proof if no other evidence discredits or casts serious doubt on the worker's version of the incident, and if the worker's testimony is corroborated by the circumstances following the incident. Smith v. UNR Home Products, 607 So.2d 898 (La. App. 2nd Cir.1992), rev'd, 614 So.2d 54 (La. 1993). Whether a claimant has carried his burden of proof and whether testimony is credible are questions of fact, subject to the manifest error standard of appellate review. Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App. 2nd Cir.1991).
In the present case, we are asked to determine the correctness of the hearing officer's exclusion of Borel's claim on the basis that his injuries were not compensable because they were the "result of a gradual deterioration that occurred over a period of months...." Our brethren of the First and Second Circuits have addressed this issue. In Dyson v. State Emp. Group Ben. Program, 610 So.2d 953 (La.App. 1st Cir.1992), the worker was a clerk whose job required her to stand all day making copies at a photocopier. After approximately one month performing this duty, she began feeling very light pain in her feet. Two months later, the worker testified that she felt a very sharp pain shoot through her feet as she turned to pick up an unusually large bundle of copies. The worker was diagnosed with an inflammation in the heel, a cumulative trauma disorder. Notwithstanding this medical diagnosis, the First Circuit found that an accident occurred when she turned and pivoted as she picked up the bundle of copies. The First Circuit stated at page 956:
"Cases suggesting that the amendments to section 1021(1) were meant to exclude from coverage people ... who are worn down by their work rather than immediately crippled by it are not consistent with the purpose of worker's compensation scheme,..."
In Rice, supra, the employee worked on an assembly line installing parts in cable telephones. The employee, who had a history of back trouble, including prior disc surgery, felt tightness in her back, radiating down into her right leg, when she attempted to push her chair closer to the assembly line, while twisting and turning at the same time to reach the parts. At page 361, the Second Circuit, still finding in favor of the injured worker, took a more restrictive view than Dyson, stating:
"The 1989 amendment to LSA-R.S. 23:1021(1) requiring that the injury be more than a gradual deterioration or progressive degeneration has adopted the inconsistency noted in McCoy [v. Kroger Company, 431 So.2d 824 (La.App. 2nd Cir. 1983)]. However, a comparison of the statute before and after the amendment leads us to the conclusion that the term accident now includes a weakened condition which collapses due to a precipitous event, but does not include a weakened condition which gradually degenerates over time. For purposes of the instant case, the key requirement under the amended definition of accident is that the event directly produced sudden objective findings of an injury rather than being merely a manifestation of a gradual deterioration or progressive degeneration."
After reviewing this jurisprudence and carefully examining the evidence presented *568 in the case sub judice, we find that Borel proved that he suffered a compensable accident under the amended definition, whether we address it under Dyson or Rice.
The present case shows that Borel's job required heavy physical labor daily, and that in connection with his work he lifted a heavy piece of pipe just before the end of a workday, a Saturday. Within a very short time afterwards, he felt stiffness and pain which steadily progressed until the following Monday when he reported his injury. Even though Borel could only offer conjecture that it was his lifting of the pipe at the end of the day which injured him, we find that the close proximity of the onset of pain and stiffness satisfied the analysis utilized in Rice, supra. Furthermore, considering the repeated heavy physical labor which Borel was required to perform, in light of Dynamic's knowledge that he had a back defect as recorded in his pre-employment physical, we further find that he proved that he was involved in a compensable work-accident as enunciated in Dyson, supra.
In reaching this determination, we find our opinion in Rubin v. PPG Industries, Inc., 527 So.2d 1 (La.App. 3rd Cir.1988), writ denied, 528 So.2d 155 (La.1988), distinguishable on the facts. In Rubin, we determined that the evidence failed to preponderate that there was a chain of causation between the employee's work and his injury. Furthermore, there was a lapse of almost five months between Rubin's last day of work and his report of an "accident". Unlike the facts in Rubin, Borel's onset of pain was almost contemporaneous with his lifting of heavy pipe while at work, and his report of the onset of pain came on the next work day. This is sufficient to satisfy the definition of a work related accident.
For the above and foregoing reasons, the judgment of the Worker's Compensation Board is reversed and this case is remanded to the hearing officer for further action.
REVERSED AND REMANDED.