|2KUHN, Judge.
Claimant appeals a decision of the Office of Workers’ Compensation which dismisses his claim for benefits on a motion for summary judgment based on a finding that claimant failed to prove his injuries resulted from an accident. We affirm.
ISSUE
The sole issue in this appeal is whether claimant’s injury resulted from an “accident” as defined in the Workers’ Compensation law, specifically La.R.S. 23:1021(1).
BACKGROUND
Claimant, John F. Loupe, was employed as an orthopedic surgeon by the Orthopedic & Sports Injury Clinic, (“the Clinic”). On May 27,1994, claimant filed a petition for workers’ compensation benefits naming as defendants, State Farm Fire and Casualty Company (“State Farm”) and The Highlands Insurance Company (“Highlands”), who provided workers’ compensation liability coverage during the time claimant was working for the Clinic. Claimant alleges he has been rendered totally and permanently disabled as a result of injuries he sustained in the course and scope of his employment for the Clinic, and that the resulting disability did not manifest until January, 1994 when he had to undergo a surgical procedure on his knee.
Defendants each filed a peremptory exception raising the objection of prescription, urging that Dr. Loupe’s claim had prescribed. After a hearing on January 18, 1995, the *187 Workers’ Compensation hearing officer (“WCHO”)[2] denied the exception. Defendants then each filed a motion for summary judgment, asserting claimant did not have a compensable injury under the Workers’ Compensation law. After a hearing, the WCHO granted the motion and dismissed claimant’s lawsuit. This appeal followed.
MOTION FOR SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same criteria that |3govern the WCHO’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Prior to 1996 La.Acts, First Extraordinary Session, No. 9, which amended La.C.C.P. art. 966, summary judgments were not favored, and all doubt concerning a dispute as to a material issue of fact was resolved against granting the motion for summary judgment and in favor of a trial on the merits. See Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d 381, 385 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). However, as amended, La.C.C.P. art. 966 now provides in pertinent part, “The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.” As this legislation is procedural in nature, it must be applied retroactively, as well as, prospectively. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555, p. 3 (La. App.2d Cir. 8/21/96), 679 So.2d 477; See also La.C.C. art. 6; Cole v. Celotex Corp., 599 So.2d 1058, 1063 (La.1992). Nevertheless, the amendments to C.C.P. art. 966 do not effect a change in the- burden of proof, as specified in Paragraph (G): “Notwithstanding any other provision of this Article to the contrary, the burden of proof shall remain with the mover.” See also Short v. Giffin, 96-0361, p. 3 (La.App. 4th Cir. 8/21/96), 682 So.2d 249; Walker v. Kroop, 96-0618, p. 4 (La.App. 4th Cir. 7/24/96), 678 So.2d 580, 583. Thus, prior jurisprudence on the issue of a mover’s burden of proof on motions for summary judgment applies to the amended version of La.C.C.P. art. 966.
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Robertson, 574 So.2d at 384. The initial determination, on a motion for summary judgment, is whether the supporting documents presented by the moving party are sufficient to resolve all material issues of fact; if they are not sufficient, summary | Judgment should be denied. Id.; Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 28 (La. 7/5/94), 639 So.2d 730, 752. To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact. Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Co., 427 So.2d 1152, 1154 (La.1983). Once the court determines the moving party has met this onerous burden, the burden of proof then shifts to the opposing party to present evidence that a material fact is still at issue; only at this point may the adverse party no longer rest on the allegations contained in his or her pleadings. Smith, 639 So.2d at 752; Robertson, 574 So.2d at 384.
The court should not seek to determine whether it is likely that the mover will prevail on the merits, but rather whether there is an issue of material fact. Insley v. Titan Ins. Co., 589 So.2d 10, 13 (La.App. 1st Cir. 1991); Good v. Fisk, 524 So.2d 203, 205 (La.App. 4th Cir.1988). We must look to the applicable substantive law to determine whether a particular fact in dispute is material. Sun Belt Constructors, a Div. of MCC Constructors, Inc. v. T & R Dragline Service, *188 Inc., 527 So.2d 350, 352 (La.App. 5th Cir. 1988).
ANALYSIS
La.R.S. 23:1021(1) provides:
“Accident” means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.[3]
(Footnote added.)
Defendants assert that claimant’s responses to interrogatories, his testimony at the hearing on the exception of prescription and the medical evidence establishes the condi-tionjjjfrom which claimant suffers is a purely progressive degeneration and thus, not com-pensable under § 1021(1).
The facts of this case are undisputed. Claimant sustained work-related injuries to his left and right knee as well as his left shoulder. The injuries are succinctly described by Dr. Loupe in his responses to interrogatories. State Farm propounded the following interrogatory to claimant: “Please give a particular description of the injuries alleged to have been suffered by you, designating those which were temporary and those which were permanent, and, as to that latter, state how they manifest themselves.” In response, claimant stated the following:
Injury to plaintiffs left knee occurred in October, 1981 while plaintiff was covering a football game at Southern University, where plaintiff was the team physician. A player was running out of bounds and plaintiff turned to get out of the player’s way and sustained a twisting type injury to his left knee.
Injury to plaintiffs left shoulder occurred on March 17, 1993, while performing surgery at Our Lady of the Lake Regional Medical Center. The shoulder was re-injured on June 2, 1993 while performing a knee surgery with Dr. Bankston. Plaintiff was reaming a patella.
Plaintiff injured right knee in 1978, while exercising. [R]e-injury to plaintiffs right knee occurred three years ago.[4] The wearing down of the joint occurred from the extended periods of standing while performing surgery, which would cause pain subsequent to each surgery until the pain progressed to the point that he was no longer capable of performing surgery. The wearing of the joint resulted in Arthritic changes.
They manifest themselves as severe loss in the left shoulder, with pain associated with movement of the shoulder, which interferes with examination of patients as well as performing operative procedures.[5] With the left knee injury, there are Arthritic changes on the medial side of the left knee joint which causes severe pain when standing and has caused a decrease in the ability to stand for any length of time. The right knee also has severe pain and Arthritis. Severe pain results during periods of standing and in the cases requiring foot operated pedals, where it is necessary to stand on one leg for extended lengths of time and operate the foot pedal with the other.
(Footnotes added.)
State Farm also propounded the following interrogatory, “Please describe fully how |6the incident sued upon took place.” Claimant’s response was:
See answer to No. 2.
*189 Plaintiff was covering the Southern University football game as the Orthopaedic Surgeon for the team. Plaintiff was standing on the sideline and was about to get run over by a player who was running out-of-bounds. Plaintiff made a quick move to get out of the way and in the process injured his left knee, which later necessitated the Arthroscopic removal of the meniscus.
The medical records submitted by claimant show that the January, 1994 operational procedure performed on claimant was a right knee arthroscopy. According to a “Record of Operation prepared by Dr. James R. Andrews, the surgeon who performed the operation, claimant had developed “progressive degenerative changes of the medial compartment of his right knee associated with a genu varus deformity.”[6]
At the hearing on the exception of prescription, claimant explained his understanding of his diagnosis relative to his right knee, stating, “I have a progressive problem from standing on my right knee in the operating room for extended periods of time in one position.” Claimant testified that it was about five years before the hearing- that he first noticed the pain in his knees while standing as he performed operations. He described the conservative treatment he underwent in attempts to manage the pain. This included a progression in anti-inflammatory medications, a good exercise program and weight control. After he had been taking Voltaren twice a day for about a year, it reached the point that he “couldn’t tolerate the pain anymore,” and in January, 1994, he elected to undergo surgery to his right knee.
Claimant asserts that because he has related the cause of degenerative changes in his knees to his work as an orthopedic surgeon, the fact that his injury is a degenerative disease is not the relevant consideration under § 1021(1). We disagree.
In Dyson v. State Employees Group Benefits Program, 610 So.2d 953 (La.App. 1st Cir.1992), this court examined the amendment to the definition of “accident,” in § 1021(1) |7stating:
Cases suggesting that the amendments to section 1021(1) were meant to exclude from coverage people like [plaintiff], and many others, who are worn down by their work rather than immediately crippled by it are not consistent with the purpose of the worker’s compensation scheme, and are not to be followed.
Id. at 956.
In Dyson, plaintiff was a clerk whose job required her to stand all day making copies at a photocopier. After approximately one month of performing this duty, plaintiff began feeling a very light pain in her feet. Two months later, plaintiff was turning to pick up a bundle of copies when she felt a very sharp shooting pain in her feet. Plaintiff was diagnosed with plantar fasciitis, an inflammation of the heel. Plantar fasciitis was described as a cumulative disorder, commonly found in people who, like plaintiff, are overweight, flat-footed and are required to stand for prolonged periods of time. Notwithstanding the root cause of the disorder, this court found that plaintiff had sustained an “accident” within the meaning of the amended version of § 1021(1) when she turned to pick up the copies and felt the sharp pain. In so concluding, the court stated that plaintiff “can, and has, identified the moment her pre-existing condition became an injury through her accident.” Dyson, 610 So.2d at 955-56.
In the case sub judice, claimant has not identified the “moment his pre-existing condition became an injury” through an accident. As the WCHO noted in her oral rea-sonsfor judgment,
[I]t was a legislative prerogative to eliminate [from qualifying as an accident under § 1021(1) ] those conditions where an employee is obviously worn down, but does not suffer an event....
[Claimant] has ... been very consistent in saying that he did have three pri- or work-related accidents, that these contributed to his condition, but his actual *190 disability was a combination of the prior accidents plus the daily trauma that he suffered when he performed surgery.
[Claimant] could very easily have testified that at such-and-such a time while he was performing surgery on such-and-such a patient . ■.. he pushed the foot pedal down and his pain became intense. And at that point he knew he could no longer perform surgery.
|gHe has not insulted [this administrative tribunal] or anybody else with that fabrication.
Based on the foregoing evidence, we find defendants established they were entitled to judgment as a matter of law. Although the claimant had an opportunity at the hearing-on the motions for summary judgment, claimant did not offer any additional evidence to rebut defendants’ showing. Accordingly, we conclude that because claimant has failed to establish that he has sustained personal injury as the result of a work-related accident, he cannot recover benefits under the Workers’ Compensation Law.[7]
CONCLUSION
For the reasons expressed, the decision dismissing the lawsuit of claimant, John F. Loupe, is affirmed.[8] All costs of this appeal are assessed to John F. Loupe.
AFFIRMED.

. We note there is no basis for referring to hearing officers as judges. La.R.S. 23:1310.1 provides for the appointment of hearing officers by the Director of the Office of Workers’ Compensation. Art. 5, Sec 22(A) (La. Const. 1974) provides that ”[e]xcept as otherwise provided in this Section, all judges shall be elected." There is no exception for hearing officers appointed to hear workers' compensation cases.

. This definition is a result of an amendment to the statute by Louisiana Acts 1989, No. 454, § 1, effective January 1, 1990. Prior to the amendment, § 1021(1) read, " 'Accident' means an unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury.”

. The certificate of service on claimant's responses to State Farm's interrogatories is dated December 28, 1994. Thus, we conclude the date of re-injury to claimant's left knee was sometime in December, 1991.

. Although claimant’s response indicates the left shoulder injury interfered with his ability to examine patients and operate, it is clear from the record it is the right knee injury which claimant asserts resulted in disability precluding him from performing his work duties.

. According lo claimant's testimony at the hearing on the exception of prescription, individuals who suffer from genu varus deformity are commonly referred to as bow legged, and he was bora with the condition.

. See La. 23:1031 (A) providing that if an employee receives personal injury by accident arising out of the course and scope of his employment, his employer shall pay compensation.

. We note defendants answered this appeal challenging the propriety of the WCHO’s determination on the exception raising the objection of prescription. Because we have determined the WCHO properly granted summary judgment, in this matter, we pretermit a discussion of whether claimant’s claims are prescribed.