hCOOKS, Judge.
This appeal arises from a hearing officer’s denial of workers’ compensation benefits to Eugenia Brewington finding she failed to prove by an “overwhelming preponderance of evidence” her mental stress was a condition “characteristic of and peculiar to” the occupation of a Licensed Practical Nurse as provided by La.R.S. 23:1031.1. For different reasons, we affirm.
FACTS
Eugenia Brewington was awarded a Licensed Practical Nurse (“LPN”) degree from Sowela Technical School in 1977 or 1978. After graduation, she worked as a LPN first for St. Patrick’s Hospital, then Deville Health Nursing Service, and finally a home health care agency before Summit Institute (Summit), defendant employer.
Ms. Brewington is a single parent. Her daughter contracted spinal meningitis as a child. Ms. Brewington provided primary care for the child until hshe died in February, 1993. Also, Ms. Brewington’s son suffers from cerebral palsy. In September of 1993, prior to employment with Summit, Ms. Brewington was treated for stress she associated with the difficulties she experienced in not finding a job that offered her more work hours.
On November 1, 1993, Ms. Brewington began working as an LPN at Summit. Summit is a rehabilitative hospital which provides long term care and rehabilitation services for very ill patients. Brewington’s work duties at Summit included, in her own words, caring for “very, very ill patients; some paralyzed, some requiring just a lot of help, tube feeders.” Ms. Brewington alleges, on at least three occasions during her employment with Summit, she was subjected to extreme on the job stress. She worked for Summit for only one month and a few days prior to the onset of her claimed disability. When ask to identify the specific instances of stress encountered, Ms. Brewington testified “about four days after” she started working for Summit “a very ill patient died and we could not get the staff doctor over to pronounce this patient dead.” When asked “[w]hy ... that event was stressful,” she stated “because [the doctor] wanted us to pronounce the patient dead and that is not legal.” The second instance she related involved a paralyzed patient she was caring for who, as she puts it, “only had use of his mouth, a dirty mouth” and he was “very abusive, verbally abusive to everyone, very demanding.” The third occurrence she recalled involved as she stated “times that management wanted us to do things a certain way, which is hardly possible considering the patients we had.” These episodes, she complained, caused her to endure tremendous stress.
On December 6, 1993, while at home, Ms. Brewington fell ^fracturing her T12 vertebrae. It is undisputed and her treating physician, Dalmacio S. Paraguya, M.D., confirmed that Ms. Brewington’s fall occurred when she fainted from internal bleeding from *500 a duodenal ulcer. Although Ms. Brewington notified Summit of the incident, she did not initially claim that her injury was work related.
Ms. Brewington was hospitalized at St. Patrick’s for treatment of the ulcer and back injury. Within a few days, she was released from the hospital and she returned to work on January 25,1994. However, she could not perform the same duties as assigned prior to the accident. Summit reassigned her to the position of medication nurse. This position she held until March 25, 1994, when the job was discontinued by Summit and she was dismissed.
For the first time, on July 12, 1994, Ms. Brewington complained in a letter addressed to Summit’s corporate attorney that her ulcer hemorrhaged as a result of job related stress. She requested that Summit pay her medical expenses and workers’ compensation benefits. Summit denied her claim stating:
“You were hired on November 1,1993, and I doubt that Dr. Paraguya will be able to show the job-related stress during the five week period of time (November 1-Decem-ber 6, 1993) caused an ulcer which progressed to the stage that it hemorrhaged.”
Subsequently, on November 1,1994, Dr. Par-aguya issued a report purportedly connecting Ms. Brewington’s bleeding ulcer and her fall to stress she associated with her job. In relevant part, he stated in this report:
Ms. Eugenia Brewington fractured her T-12 vertebra when she fainted and fell. The cause of her fainting was the bleeding from a Duodenal Ulcer. For months before this bleeding episode she had been under ^tremendous stress related to her job. She was seen and treated for stress on September 1993 three months prior to her bleeding episode on December 1993. Currently, as a result of the fracture in her back, she is no longer able to work as a nurse. The ultimate cause of her disability in my opinion, is the job stress which was the immediate cause of her Duodenal Ulcer, which in turn, caused her to faint and fell when the ulcer bled. (Italics added).
Ms. Brewington eventually filed a claim for benefits and the matter was fixed for trial on December 4, 1995. In deciding to treat Ms. Brewington’s claim as one arising from an occupational disease rather than from an accident or event producing injury, as provided by LSA-R.S. 23:1021(1) and (7), the hearing officer concluded:
“The primary issue presented is whether Ms. Brewington’s condition arose from an ‘accident’ which produced an ‘injury,’ per LSA-R.S. 23:1021(1) and (7), or whether it must be evaluated as an ‘occupational disease’ per LSA-R.S. 23:1031.1.
Counsel for Ms. Brewington contends that the stressors at work constitute an ‘event’ producing injury by accident, citing Dyson v. State Emp. Group Ben. Program, 610 So.2d 953 (La.App. 1st Cir. 1992). However, Dyson involved a physical event which did immediately produce pain. In the present case, it cannot be established at what point Ms. Brewington’s ulcer developed, or even when it began to bleed. See also, Cutno v. Neeb Kearney & Company, Inc. [237 La. 828], 112 So.2d 628 (La.1959). The court does not feel that these cases apply. Ms. Brewington’s claim is one for physical injury caused by mental stress. The only statutory authority for injuries arising from mental stress is found at 23:1021(7)(b) which allows for mental injury caused by mental stress.
The employer contends that Ms. Brew-ington’s case must be evaluated as an occupational disease, and that it must fail because a bleeding ulcer is not a ‘disease’ or illness which is due to causes and conditions characteristic of and peculiar to the Igparticular trade, occupation, process, or employment in which the employee is exposed to such ‘disease’ per 23:1031.1(B), and further, has not been established as being work related by an ‘overwhelming preponderance of evidence’ per 23:1031.1(D). The ‘overwhelming preponderance’ standard would apply as Ms. Brewington had been employed with the defendant less than twelve months. The Court agrees that Ms. Brewington has failed to establish her claim as an occupational disease.”
Although Ms. Brewington assigns four errors for our review, each rest on her argument *501 that the hearing officer incorrectly applied the wrong burden of proof in assessing the merit of her claim for benefits. The hearing officer’s error, she contends, occurred when she decided to evaluate her claim as arising from an occupational disease rather than from a work “accident” producing injury. The latter instance does not require that she carry the more onerous burden of establishing by “overwhelming” evidence that she contracted an occupational disease less than twelve months after employment. Relying on LSA-R.S. 23:1021(1), she contends the jurisprudence interpreting this provision “only [requires] that [she] identify the ‘event’ that caused or aggravated [her] condition.” LSA-R.S. 23:1021(1) states:
“‘Accident’ means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of injury which is more than simply a gradual deterioration or progressive degeneration.”
Ms. Brewington argues the three instances she testified happened on the job constituted sufficient proof of work related “events,” as defined in the referenced provision, that either precipitated her bleeding ulcer or aggravated her pre-existing condition.
| ¡¡The hearing officer found Ms. Brewing-ton’s failed to prove by an “overwhelming preponderance of evidence” that her bleeding ulcer was a “disease or illness which [was] due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment” to which she was exposed. La.R.S. 23:1031.1.
LAW & DISCUSSION
It is well settled in workers’ compensation cases that appellate courts are required to apply the “manifest error — clearly wrong” standard of review. To determine whether manifest error occurred below, an appellate court must review the record in its entirety. Alexander v. Pellerin Marble & Granite, 93-1698 (La. 1/14/94), 630 So.2d 706; LeCroy v. Brand Scaffold Bldg., Inc., 95-1522 (La.App. 1 Cir. 2/23/96), 672 So.2d 181. Factual findings of the hearing officer may not be set aside unless they are manifestly erroneous or clearly wrong. Key v. Insurance Co. of North America, 605 So.2d 675 (La.App. 2 Cir.1992). Great weight is given the hearing officer’s factual conclusions, reasonable evaluations of credibility, and reasonable inferences of fact. Dixon v. Louisiana Restaurant Ass’n, 561 So.2d 135 (La.App. 3 Cir.1990).
Although we are persuaded by Ms. Brewington’s argument that her claim for workers’ compensation benefits is not governed by the occupational disease provisions, the “proof’ she presented nonetheless is insufficient. Ms. Brewington must do more than simply “identify” the events she claimed caused or aggravated her condition. She also must present sufficient evidence casually finking these events to her disability. The first circuit’s holding in Dyson v. State Emp. Group Ben. Program, 610 So.2d 953 (La.App. 1 Cir.1992), cited |7by Ms. Brewington, does not relieve her from this evidentiary burden. The real issue in this case is whether the proof presented by Ms. Brewington sufficiently connected the alleged events with the onset or aggravation of her condition. The occurrence of an event, albeit accidental, does not always produce injury.
The hearing officer found Ms. Brewington failed to establish “at what point” her ulcer developed or “even when it began to bleed.” Dr. Paraguya admitted his opinion that Ms. Brewington’s condition was caused or aggravated by on the job stress rested solely on the history she alone related to him. Dr. Paraguya began treating Ms. Brewington in November, 1991 when she appeared on her first visit complaining “mainly” of experiencing depression. The doctor prescribed anti-depression medication for this condition and provided her with information on depression management. Dr. Paraguya continued to monitor her condition; and, in 1992 he also diagnosed that she was suffering from hyper-lipidemia, a condition caused by high cholesterol and triglyceride levels. In February, 1992, he prescribed Lopid as medication to control this abnormality. On April 21, 1992, Ms. Brewington returned to the doctor’s office complaining that the medication was upsetting her stomach. Dr. Paraguya then recommended she begin taking Tagament, “an *502 antiacid or antiulcer medication.” Dr. Para-guya also noted Ms. Brewington was taking Premarin, a female hormone, and Salsalate, “an anti-inflammation medicine, which is a cousin of aspirin.” On September 27, 1993, Ms. Brewington appeared at Dr. Paraguya’s office stating she was “under stress;” and the doctor diagnosed her as still suffering from anxiety and depression. He found her cholesterol and triglycerides were so high that she had to resume taking Lopid. He advised her |8if this medication upset her stomach again he would give her “some samples” of Zocor. In addition to the Desipra-mine prescribed in 1991 for Ms. Brewington’s depression, Dr. Paraguya also recommended that she take Clorazepate. When Ms. Brew-ington fell on December 6, 1993, fracturing her back, she related to Dr. Paraguya during her hospital stay that two weeks prior to her admission she began “having ... coffee ground vomiting and then black stools or tarry stools.” Just before the fall, she experienced dizziness and light-headedness. Ms. Brewington also revealed to him a history of suffering from peptic ulcer disease. Dr. Par-aguya found Ms. Brewington was suffering from a bleeding duodenal ulcer at the time of the fall. When asked whether a “peptic ulcer essentially [is] the same as a duodenal ulcer,” Dr. Paraguya responded “yeah, we use it interchangeably.” The only notation in Dr. Paraguya’s record referring to “job related stress” occurred prior to her employment with Summit. His recollection of statements made by her on this subject after employment with Summit before or even after her injury is dependent entirely on the strength of his memory. He admitted that he could not recall any specific instances she may have mentioned. He was not familiar with the actual job duties she performed at Summit. He could not “pinpoint” with any degree of certainty or even “guess” using the probability scale when Ms. Brewington’s ulcer developed or started bleeding. More importantly, he could not rule out the stronger probability that her ulcer existed prior to her employment with Summit. As noted, her medical history evidences she suffered from peptic ulcer long before; and, Dr. Paraguya diagnosed her condition as chronic rather than acute. He could not even exclude the likelihood that Ms. Brewington’s ulcer start-edjgbleeding prior to her employment with Summit.
The hearing officer also concluded R.S. 23:1021(7)(b), which allows recovery for mental injury caused by mental stress, was not applicable to the facts presented. This provision was amended subsequent to our decision in Stuckey v. Home Ins. Co., 433 So.2d 776 (La.App. 3 Cir.), writ denied, 435 So.2d 450 (La.1983) and it now provides in pertinent part:
“... Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence.”
Subpart (d) of the same provision also states:
“No mental injury or illness shall be com-pensable under either Subparagraph (b) or (c) unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist and the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.”
Plaintiff understandably does not assign as error the hearing officer’s finding that these provisions are inapplicable. Obviously, she failed to satisfy the heightened burden of proof statutorily required in “mental injury” cases caused by mental stress — sometimes referred to as mental/mental stress cases. Instead, she urges that because the stress she endured produced physical injury, a “hiatus” of sort exists in the law and her claim is unaffected by the recent amendments to the Act. Her burden, she insists, is only to show by a mere preponderance of evidence that on the job stress caused her claimed |10mjury. Even if we agreed with her contention, plaintiff has not satisfied the lighter “preponderance of evidence” burden adopted by us in Stuckey, 433 So.2d 776. In that case, we said “although procedural rules are construed in *503 favor of workers’ compensation claimants, the burden of proof, by a preponderance of the evidence is not relaxed.” Id. at 778. A claimant “has the burden of proving all essential elements of his cause of action.” Id. citing Prim v. City of Shreveport, 297 So.2d 421 (La.1974). Quoting from McDonald v. International Paper Co., 406 So.2d 582 (La.1981), we noted in Stuckey, 433 So.2d at 777-78 that “the vast majority of other jurisdictions hold that extraordinary anxiety and worry associated with employment constitute, without more, an accidental injmy, justifying an award of workman’s compensation if the injury has caused physical deterioration such as a myocardial infarction.” In this case, Ms. Brewington’s argument is similarly based. She alleges the physical deterioration caused by the claimed work stress was either the development of her duodenal ulcer or the aggravation of her pre-existing peptic ulcer condition. Belying on McDonald, 406 So.2d 582, we held in Stuckey, 433 So.2d 776 that the claimant was required to “prove his on-the-job stress was extraordinary or greater than that of everyday life.” The preponder ance of evidence burden does not relieve plaintiff in this case from showing the stress she allegedly endured was “extraordinary mental and emotional stress related to her employment.” Nothing in the record suggests that Ms. Brewington’s alleged on the job stressors were greater or dissimilar from those encountered by co-employees or that she was singled out to perform unusual or atypical work duties not required by other health care providers | ^engaged in caring for “very ill patients.” The first event she cites is a common occurrence in the experiences of those who care for paralyzed patients who sometimes are depressed and verbally demanding. Further, she did not testify that the other difficulties she allegedly encountered involving management and one doctor were experiences shared by her alone. In fact, she often spoke in the plural indicating the stressful “orders” were directed to other employees as well. Plaintiff simply failed to carry her burden of proof, whether by a preponderance or greater. The hearing officer’s ultimate ruling was not legally erroneous.
The other errors assigned by Ms. Brew-ington are moot because we find the hearing officer correctly dismissed her claim for benefits.
DECREE
For the foregoing reasons, the judgment of the hearing officer is affirmed. All costs of this appeal are assessed against the appellant, Eugenia Brewington.
AFFIRMED.