fyCLAIBORNE, Judge.
This appeal is by an employer, Enterprise Products Partners, L.L.P. d/b/a Enterprise Products Company (Enterprise), from a decision of the workers’ compensation judge (WCJ), awarding claimant, Steven R. Carmean, workers’ compensation benefits, medical expenses, penalties, and attorney’s fees associated with a disputed claim for an occupational disease. (The WCJ was Hon. Pamela Moses-Laramore of the Office of Workers’ Compensation, District 5.)[2] Claimant answered the appeal and sought an increase in attorney’s fees. For the following reasons, we amend and affirm.
FACTS
Claimant was employed by Enterprise as a mechanic performing preventive maintenance on eighteen-wheel diesel trucks. He began working at the Enterprise mechanic job on December 3, 1995.[3] Claim *98 ant was 47 years old and he had worked as a mechanic or welder for most of his life. Claimant’s job duties required him to work long days (10 to 14 hours) on his feet for up to 60% of the day on a hard, concrete surface. Many times a day, he would climb up on and jump down from large eighteen-wheel trucks to work on the engines. He also walked around and crawled under the trucks in order to perform the required maintenance work.
Over time, claimant’s feet became painful in the area of his heels. The pain progressively got so bad that he had trouble standing at work, performing his job, and sleeping at night. Claimant’s supervisor at Enterprise, John W. Rimes, was aware that claimant had problems with his feet. In July 1996, claimant sought treatment with an orthopedic surgeon, Dr. Thad S. Broussard, for the daily pain in his feet.
laDr. Broussard diagnosed claimant with a painful heel disorder called plantar fasci-itis, and began conservative treatment with anti-inflammatory and pain medications, heel cups for claimant’s shoes, and modified shoe wear. Dr. Broussard continually treated claimant for two years, and then on June 15, 1998, he wrote a note advising claimant’s employer that claimant could work, but could not endure prolonged standing or walking. Dr. Brous-sard advised claimant that his job was most likely aggravating his plantar fasciitis condition, and that claimant needed to be in a position where he was not required to be on his feet as much, particularly standing on concrete. Claimant worked for Enterprise until June 28, 1998, when he quit his job because he could no longer stand on his feet for long days on the hard concrete surface. Enterprise did not have a light-duty job to offer him.
On November 16, 1998, claimant filed a disputed claim for workers’ compensation benefits with the Office of Workers’ Compensation Administration, District 5, because Enterprise declined to pay him any compensation benefits. After resigning from his Enterprise job, claimant moved to Iowa to be near his sister and find employment. Claimant eventually underwent plantar fascial release surgery on his left foot in March 1999; however, he continues to suffer with pain in both feet and is unable to work at a job that requires prolonged' standing on his feet.
On December 16, 1999, after a trial on the merits, the WCJ rendered judgment in favor of claimant and against Enterprise. The WCJ specifically found that claimant’s “condition of plantar fasciitis in both feet is not the result of an accident, but rather is an occupational illness.” The WCJ awarded supplemental earnings benefits, medical benefits, all costs, $2,000 in penalties and $2,500 in attorney’s fees.
This appeal by Enterprise followed, raising three assignments of error: (1) the WCJ erred in not finding claimant’s condition was the result of an accident and 1 ¿was therefore prescribed; (2) the WCJ erred in finding claimant’s condition was “occupationally related” and therefore compen-sable; and (3) the WCJ erred in awarding penalties and attorney’s fees for Enterprise’s failure to pay benefits. Claimant answered the appeal, requesting that the judgment be affirmed and seeking an increase in the amount of attorney’s fees awarded for the additional work required on this appeal.
*99 STANDARD OF REVIEW
The standard for reviewing workers’ compensation cases was summarized by the Louisiana Supreme Court in Seal v. Gaylord Container Corp., 97-0688, pp. 4-5 (La.12/02/97), 704 So.2d 1161, 1164, as follows:
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Where there are two permissible views of the evidence, a fact-finder’s choice between them can never be manifestly erroneous or clearly wrong. “Thus, ‘if the [factfinder’s] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” ’ (Citations omitted.)
LAW AND ANALYSIS

Work-Related Accident

The WCJ specifically found that claimant had not sustained a work-related accident which resulted in his plantar fas-ciitis condition; therefore, the WCJ did not reach the issue of prescription.[4] The factual finding of the WCJ on whether an accident occurred or not is entitled to great weight on appellate review. Bruno v. Harbert International, Inc., 593 So.2d 357, 364 (La.1992). We have reviewed the evidence and find no manifest error in this factual finding.
| ^Claimant testified that he could not pinpoint a specific time or event that triggered his foot pain. He stated that he remembers the pain began while he was at work approximately one month before he finally sought treatment with Dr. Brous-sard on July 19, 1996. He also testified that the pain in his feet progressively got worse the more he worked.
Enterprise points to the date of July 19, 1996, as being significant in terms of an “accident”; however, it is clear from the evidence that July 19, 1996, is simply the date that claimant became aware of his plantar fasciitis condition after his visit to Dr. Broussard. Claimant never reported an “accident” to his supervisor at Enterprise. He did, however, inform his supervisor that he was experiencing foot pain from being on his feet. Claimant’s supervisor, Mr. Rimes, testified that he was aware that claimant had foot problems, but he could not recall any specific event or day when claimant’s feet started hurting.
Dr. Broussard testified by way of deposition, and was accepted as an expert in orthopedic surgery. Dr. Broussard stated that claimant had not related a specific event that caused the onset of his pain, rather claimant indicated that his feet had been painful for quite a while before his visit to Dr. Broussard on July 19, 1996. Dr. Broussard also testified that he had never seen a case of plantar fasciitis brought on by a one-time specific trauma or incident. He stated that this painful heel disorder is a condition that develops over time and that prolonged time standing on concrete would aggravate the condition. He explained that the “fascia” in the foot becomes inflamed along the “plantar,” or the walking surface of the foot, due to a strain of some kind. Dr. Broussard opined that a person could be walking at work or *100 standing on concrete for long periods of time and become symptomatic.
Enterprise asserts that we are constrained by a case we previously reviewed, Dyson v. State Employees Group Benefits Program, 610 So.2d 953 (La.App. 61st Cir. 1992), wherein we found that a plaintiff with a diagnosis of plantar fasciitis had been injured in an “accident” as defined by La. R.S. 23:1021(1).[5] However, we do not find that Dyson controls the outcome of the instant case. Dyson is distinguishable by the fact that the plaintiff clearly identified a particular incident/event at work when she pivoted and felt an immediate and sharp pain in her feet. While there was testimony in Dyson about the plantar fasciitis injury being caused by repetitive movement (prolonged standing) done over time, the plaintiff cited a particular incident identified at work when the pain changed or became different.
In the instant case, claimant could not identify a particular event or incident after which his foot pain began. Instead, he testified that the pain in his feet progressively became unbearable while he was at work approximately one month to sixty days prior to seeking medical advice. He felt the pain when he was walking, standing, climbing up into and jumping down out of trucks, and while he was sleeping. Thus, the WCJ’s finding that claimant did not sustain a work-related accident is a permissible view of the evidence, which we do not find to be clearly wrong.

Occupational Disease

The WCJ ruled that claimant’s “plantar fasciitis condition is occupationally related.” This was a question of fact which will not be disturbed absent a finding that it was clearly wrong or manifestly erroneous. See Vargas v. Daniell Battery Mfg. Co., Inc., 93-1249, p. 8 (La.App. 1st Cir.5/20/94), 636 So.2d 1194, 1197. After reviewing the record, we conclude that the WCJ’s ruling that claimant suffered from an occupational disease was a reasonable conclusion supported by sufficient evidence.
|7The plaintiff in a workers’ compensation action based on an occupational disease must establish by a preponderance of the evidence that there is a disability which is related to the employment-related disease. Vargas, 93-1249 at 7, 636 So.2d at 1197. The concept of “accident” was broadened by the legislature when it provided for compensation benefits for occupational diseases. O’Regan v. Preferred Enterprises, Inc., 98-1602, p. 11 (La.3/17/00), 758 So.2d 124, 132. Occupational disease is defined in La. R.S. 23:1031.1(B) as follows:
An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or peri-vascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section. (Emphasis added.)
The sole reason for the adoption of La. R.S. 23:1031.1 was to alleviate for employ *101 ees the almost impossible task of proving an “accident” in occupational disease cases. O’Regan, 98-1602 at 11 n. 12, 758 So.2d at 141 n. 12.
In examining the merits of an occupational disease claim, the threshold question is whether or not the claimant has sustained an occupational disease resulting from causes and conditions characteristic of and peculiar to his particular trade, occupation, process, or employment. Coats v. American Tel. & Tel. Co., 95-2670, p. 7 (La.10/25/96), 681 So.2d 1243, 1247. An occupational disease has been described as the result of a series of events often imperceptible in nature, which are eventually evidenced in the manifestation of a disability. Vargas, 93-1249 at 7, 636 So.2d at 1197. The claimant must show that he contracted the disease during the course of his employment and that the disease was the result of the nature of the work performed. Vargas, 93-1249 at 7, 636 So.2d at 1197.
In the instant case, the medical and lay testimony and the medical records established that claimant suffered from severe foot pain while performing his .job |sas a mechanic on large, eighteen-wheel trucks. Claimant offered uncontradicted testimony regarding the amount of time he spent each day standing on his feet while performing his job. He testified that he would constantly climb onto truck motors, and jump back down to the hard concrete floor while performing the maintenance on the trucks. Claimant also offered the un-contradicted expert testimony of his treating physician, Dr. Broussard, who stated that given claimant’s history, the plantar fasciitis was caused by conditions peculiar to claimant’s job. Enterprise offered no expert testimony to rebut Dr. Broussard’s opinion. Additionally, Dr. Broussard testified that claimant’s condition progressively got worse while he conservatively treated claimant for two years. This prompted Dr. Broussard to recommend that claimant move to a light-duty job, avoiding prolonged standing and walking on hard concrete. Claimant established, and his supervisor verified, that Enterprise did not have a light-duty job to offer to claimant. Therefore, claimant resigned his employment from Enterprise. Claimant further testified that he has not been able to find employment as a mechanic or welder because it is too painful to be on his feet while working.
After a thorough review of the evidence, we find no error in the WCJ’s determination that the claimant’s plantar fasciitis constituted an occupational disease caused by the peculiar circumstances of his job as a mechanic. Thus, claimant was entitled to compensation and medical benefits.[6]

Penalties and Attorney’s Fees

The WCJ awarded $2,000 in penalties and $2,500 in attorney’s fees to claimant. Whether the refusal to pay benefits warrants the imposition of penalties and attorney’s fees is a factual question which will not be disturbed upon review in the absence of manifest error or unless clearly wrong. Haws v. Professional 9Sewer Rehabilitation, Inc., 98-2846, p. 10 (La.App. 1st Cir.2/18/00), 763 So.2d 683, 690-691. La. R.S. 23:1201 allows for the imposition of penalties and attorney’s fees when the employee’s rights to benefits were not reasonably controverted. The test to determine whether the employee’s right to benefits was reasonably controverted is set forth in Watson v. Amite Milling Co., Inc., *102 560 So.2d 902, 906 (La.App. 1st Cir.), writ denied, 567 So.2d 614 (La.1990), as follows:
,[G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. (Citations omitted.)
In this case, the WCJ found that Enterprise’s failure to offer any factual or medical evidence to counter the expert testimony of Dr. Broussard was an indication that there was no basis for the denial of claimant’s claim as an occupational disease. Enterprise was aware that claimant was alleging he suffered from an occupational disease, rather than sustaining an injury in a work-related accident. Enterprise did not seek factual or medical evidence to support its contention that plantar fasciitis was not an occupational disease. Enterprise did not insist that claimant undergo an independent medical exam. Enterprise offered no evidence to rebut Dr. Broussard’s testimony or to defend its decision to deny benefits.
Enterprise’s claims adjuster testified that he “investigated” the claim by reviewing claimant’s medical records and job requirements. He also called “two or three” unidentified attorneys to inquire whether plantar fasciitis was an occupational disease. (He did not indicate whether the attorneys were retained or gave anything more than “curbstone” opinions.) The adjuster did not consult with a physician or other medical expert to determine whether a particular type of job | mlends itself to the condition. He did talk to a registered nurse in vocational rehabilitation case management who told him she was not aware of any cases she has handled in which plantar fasciitis was considered an occupational disease. Enterprise did not consider the plantar fasciitis injury to be peculiar to claimant’s job, so a decision was made to deny the claim. Under these circumstances, we do not believe that Enterprise reasonably controverted the claim. We can see no manifest error in the WCJ’s imposition of penalties and attorney’s fees.
In an answer to the appeal, claimant sought an increase in attorney’s fees for defending the appeal. An increase is appropriate when the employer appeals, obtains no relief, and the appeal has necessitated additional work for claimant’s counsel, provided the claimant properly requests the increase. See La.Code Civ. P. art. 2133; Elswick v. Highway Transport, 96-0014, p. 11 (La.App. 1st Cir.9/27/96), 680 So.2d 1364, 1370. We conclude that the claimant is entitled to a $1,000 increase in attorney’s fees attributable to Enterprise’s appeal, which was not orally argued.
CONCLUSION
For the above reasons, the judgment is amended to award an additional $1,000 in attorney’s fees to claimant for the appeal; the judgment is otherwise affirmed. Costs of this appeal are assessed to Enterprise.
AMENDED AND, AS AMENDED, AFFIRMED.

. La. R.S. 23:1310.5(F) requires that the published court of appeal opinion identify the office of workers’ compensation district from which the appeal was taken and the name of the workers’ compensation judge who rendered the judgment or award.

.Enterprise actually purchased the business from claimant's previous employer, Younger Brothers, in December 1996. Younger Brothers was made a third party defendant, but *98 was dismissed after trial. The portion of the judgment dismissing Younger Brothers has not been appealed.

. In oral reasons for judgment, the WCJ expressed the opinion that if an accident were found to have occurred, then claimant's claim would have been prescribed.

. La. R.S. 23:1021(1) defines an "accident” under the Louisiana Workers' Compensation Act as: "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” (Emphasis added.)

. The actual amounts awarded for supplemental earnings benefits and medical benefits were not at issue in this appeal.